UNITED STATES of America, Appellee,

v.

Jeffrey H. SCHWARTZ, Appellant.

No. 85–3218.

United States Court of Appeals,
Third Circuit.

Argued Jan. 10, 1986.

Decided May 21, 1986.

Gerald B. Lefcourt, P.C., Gerald B. Lefcourt (argued), New York City, for appellant.

U.S. Atty., W.D. Pennsylvania, J. Alan Johnson (argued), Pittsburgh, Pa., for appellee.

Before GARTH and STAPLETON, Circuit Judges and FULLAM, District Judge.*

PER CURIAM.

Convicted of distributing a small quantity of cocaine (about one-half ounce) and sentenced to a 10-year prison term, appellant Jeffrey Schwartz seeks reversal of his conviction. He asserts that he was deprived of his right to a fundamentally fair trial in three ways: (1) by the erroneous admission of evidence of other crimes, in violation of Federal Rule of Evidence 404; (2) by the trial judge's hostility and bias; and (3) by the trial judge's receipt, from extra-judicial sources, of (false) information adverse to the defendant, the judge's reliance thereon, and the denial of a recusal motion filed when the alleged incident came to light shortly after the conclusion of the trial. We agree with the first of these contentions, and remand for a new trial.

* Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

In view of this disposition, it is unnecessary to dwell at length upon the other two assertions.

## I. *BACKGROUND*

Appellant, in his mid-30s, has lived for several years in an intimate relationship with a young lady named Joyce Marker. She is the daughter of a government official in the Western Pennsylvania area. Her parents strongly disapprove of the relationship and of the appellant. However, her younger brother, Scott Marker—aged about 20 when the relevant events occurred—has maintained close ties with both the appellant and his sister over the years.

On the evening of November 23, 1983, Scott Marker and a friend of his were engaged in helping the appellant and Joyce Marker move their furniture to a new residence. Later the same night, at about 1:30 a.m. on November 24, 1983, local police officers spotted a suspicious van in the parking lot of a closed restaurant in a rural area. Upon investigation, they learned that the van was occupied by Scott Marker, in the driver's seat; a young man named Kevin Morelli, in the passenger seat; and a young lady named Diane Smidansky—Scott Marker's girl friend—seated between the two. After ordering these persons to get out of the van, the police conducted a patdown search. In Scott Marker's pocket was a small plastic bag containing about one-half ounce of cocaine and a razor blade; some envelopes which had apparently contained a white powder at some earlier time; and an empty "Bic" pen casing with evidence that it had earlier been used for sniffing cocaine. Searches of the van at the scene and later on disclosed a kitchen-type cutting board with a whitish powder residue thereon; vestiges of marijuana; and other miscellaneous drug paraphernalia.

The van was owned by Kevin Morelli's brother. No drugs were found in the actual possession of either Diane Smidansky or Kevin Morelli, and they were not charged.

Scott Marker was charged under state law with the criminal offense of possession of cocaine, but in exchange for his agreement to cooperate with the authorities was granted use-immunity and was placed in an accelerated rehabilitation program (ARD). He told the police that he had obtained the cocaine from the appellant earlier in the evening. His testimony to that effect at appellant's trial provided the principal evidentiary support for the conviction appealed from.

The Indictment contains but a single count, charging appellant with having distributed cocaine on or about November 24, 1983. At the start of the trial, the prosecuting attorney informed defense counsel that he intended to elicit from Scott Marker testimony not only about the November 24 incident, but also to the effect that appellant had furnished him with cocaine on innumerable other occasions over a four-or-five-year period.

Before any evidence was presented, defendant's counsel made a formal motion to exclude the proffered testimony about other crimes. After considering the arguments of counsel, and after a recess in which further research was apparently conducted, the trial judge denied the motion and overruled all objections to this evidence. Thereupon, as part of the government's case in chief, Scott Marker testified that the defendant supplied him with cocaine, not only on the occasion charged in the Indictment, but also on numerous other occasions, beginning when Scott Marker was a 16-year-old high school student. In addition, he provided the further information that he had shared with other high school students the cocaine obtained from the defendant.

The record makes clear that appellant, by repeated objections and motions throughout the trial, preserved his right to appellate review of the various rulings of the trial judge admitting this evidence.

## II. *DISCUSSION*

Federal Rule of Evidence 404(b) provides:

"(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts

is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

As the notes of the Advisory Committee point out

"Subdivision (b) deals with a specialized but important application of the general rule excluding circumstantial use of character evidence. Consistently with that rule, evidence of other crimes, wrongs, or acts is not admissible to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with it. However, the evidence may be offered for another purpose, such as proof of motive, opportunity, and so on, which does not fall within the prohibition. In this situation, the rule does not require that the evidence be excluded. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403."

And, of course, Federal Rule of Evidence 403 provides that

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

There is a great deal of uncertainty in the record as to the purpose for which the evidence of other crimes was offered, and as to the basis on which it was admitted. At no point—during the lengthy arguments over admissibility of the evidence in the course of the trial, or in the court's rulings, or in the charge to the jury, or even in the government's briefs on appeal—can there be found anything more specific than a reference to the entire laundry-list of possible exceptions to the general rule excluding such evidence. Trial counsel for the defendant repeatedly stressed this ambiguity, and offered sweeping stipulations relieving the government of the need to prove anything other than that the substance possessed by Scott Marker when he was arrested had been obtained from the defendant. That is, the defendant offered to stipulate that if the jury concluded that Scott Marker had obtained the substance from the defendant, the defendant readily conceded that the substance was indeed cocaine, that the defendant knew it was cocaine, and that the defendant acted intentionally, and not by accident or mistake. Defendant's sole defense was limited to the issue of distribution: the defendant presented evidence, through cross-examination of Scott Marker and through the testimony of defense witnesses, to the effect that Scott Marker had journeyed to the University of Pittsburgh to keep an appointment with a friend earlier in the evening, and thereafter had been seen in possession of a substantial quantity of cocaine both before and at the time of his arrival at the defendant's residence that evening.

■ The defendant's expressed willingness to stipulate to substantial portions of the government's case does not, of course, preclude the government from presenting relevant, admissible, evidence. *See United States v. Chaimson,* 760 F.2d 798, 805–06 (7th Cir.1985). *But see United States v. Manafzadeh,* 592 F.2d 81, 87 (2d Cir.1979). Generally speaking, it is for the prosecutor, not the defendant, to shape the government's trial strategy with a view toward sustaining its heavy burden of proof. On the other hand, the presence or absence of a genuine need for the questioned evidence is a legitimate part of the balancing analysis required by Federal Rule of Evidence 403. *See United States v. Herman,* 589 F.2d 1191, 1198 (3d Cir. 1978).

■ In the circumstances of this case, there is room for argument that the evidence about earlier alleged drug dealings

between defendant and Scott Marker neither proved nor tended to prove anything more than the defendant's propensity for criminal activity of that kind. The government's repeated assertions that the evidence was admissible to prove all of the matters covered by the listed exceptions, and (unspecified) other legitimate purposes as well, seemingly strengthens that argument. For surely, if one or more of the exceptions is applicable, it should be possible to specify which, and to provide a reasoned explanation of the alleged relevance.

We deem it unnecessary to reach a firm conclusion on that score, however. Assuming that the "other crimes" evidence had some relevance to an issue other than character/propensity, in the circumstances of this case its relevance was marginal at best, and the prejudice to the defendant was very great. If the trial judge had undertaken the balancing analysis required by Federal Rule of Evidence 403, we are confident that he would have realized that, irrespective of its possible technical admissibility under Rule 404(b), the evidence should have been excluded.

It bears mention that the prejudice to the defendant arises not only from the implication that, since he had committed other crimes, he must be guilty of the crime on trial, but also from the fact that the generalized nature of the testimony precluded any meaningful refutation except a similarly generalized denial. It should be noted that the Indictment charged the defendant with having given away a small quantity of cocaine in a social setting; generalized testimony suggesting that the defendant was a large-scale and longstanding supplier of cocaine to high school students made a fair trial on this Indictment unlikely. We therefore conclude that the district court abused its discretion in admitting the disputed evidence. Since we cannot say that it is "highly probable that the evidence ... did not contribute to the jury's judgment of conviction," *Government of the Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976), the error cannot be regarded as harmless, and we therefore remand for a new trial.

The appellant also contends that the trial judge exhibited bias against appellant and his counsel throughout the trial, and should have recused himself because of his (alleged) improper receipt of *ex parte* communications concerning the appellant. Since a new trial is required because of the erroneous evidentiary ruling discussed above, it is unnecessary to consider whether the trial was marred in other respects. With regard to the recusal motion—filed after the trial was concluded—it is apparent (1) that, rightly or wrongly, appellant and his counsel sincerely believe that appellant's sentence was improperly influenced by *ex parte* communications; (2) that the charges of bias and the filing and pursuit of the recusal motion, both in the district court and on appeal, might tend to generate or exacerbate adverse emotional reactions; and (3) that an evidentiary hearing would be required in order to lay to rest the recusal question. In these circumstances, the interests of efficient administration of justice would best be served by pretermitting the recusal matter, by the simple expedient of suggesting that the retrial be conducted before a judge who has had no involvement in the case to date.

We emphasize that this suggestion is grounded solely upon expediency, and is no way a reflection upon the fairness and impartiality of the highly respected jurist who presided at the first trial.

### III. *CONCLUSION*

The judgment appealed from will be reversed, and the case remanded for a new trial.