STATE of Iowa, Appellee,

v.

Argilee HENDERSON, Appellant.

No. 03–0625.

Supreme Court of Iowa.

May 6, 2005.

Linda Del Gallo, State Appellate Defender, and James G. Tomka, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Mark Campbell, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Argilee Henderson, appeals from a judgment of conviction after a jury found she was guilty of possession of marijuana and possession of methamphetamine. She claims the trial court erred in failing to grant her motion for judgment of acquittal on grounds the evidence was insufficient to establish that she possessed

the drugs. Alternatively, Henderson argues she is entitled to a new trial because the court erred in admitting evidence of her prior conviction for possession of marijuana.

Henderson's appeal was transferred to the court of appeals, where her convictions were affirmed. That court concluded there was sufficient evidence to prove Henderson had dominion and control over the drugs. In addition, the court of appeals held the district court did not abuse its discretion in admitting evidence of Henderson's prior drug conviction. The court ruled this evidence was relevant to prove Henderson *knowingly* possessed marijuana, and the probative value of the prior-acts evidence was not outweighed by the danger of unfair prejudice.

This court granted the defendant's application for further review. Upon our consideration of the parties' arguments and the controlling legal principles, we vacate the court of appeals decision, reverse the district court judgment, and remand the case for a new trial. Although we think the evidence was sufficient to prove the defendant possessed the illegal substances, we conclude the trial court abused its discretion in admitting evidence of Henderson's prior drug offense. Because this error was not harmless, a new trial is necessary.

## I. *Sufficiency of the Evidence.*

The defendant asserts the trial court erred in failing to grant her motion for judgment of acquittal based on the insufficiency of the evidence to establish that the marijuana and methamphetamine found by the police in her apartment belonged to her. *See generally State v. Allen,* 304 N.W.2d 203, 206 (Iowa 1981). ("A motion for judgment of acquittal is a means for challenging the sufficiency of the evidence to sustain a conviction....."). The stan-

dards governing our review of such claims are well established:

> We review a sufficiency-of-the-evidence ruling for correction of errors of law. If the verdict is supported by substantial evidence, we will uphold a finding of guilt. " 'Substantial evidence' is that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." In conducting our review, we consider all the evidence, that which detracts from the verdict, as well as that supporting the verdict. We view the evidence in the light most favorable to the State.

*State v. Hagedorn,* 679 N.W.2d 666, 668–69 (Iowa 2004) (citations omitted).

Viewed in a light most favorable to the State, the jury could have found the following facts. On August 22, 2002, Woodbury County Deputy Robert Aspleaf served a writ of removal and possession at Henderson's apartment. (Henderson was the only person on the lease.) The writ required Aspleaf to remove the defendant and her possessions from the apartment and place the landlord in possession of the premises. Aspleaf was accompanied by the landlord and three helpers brought by the landlord.

When this group arrived at Henderson's apartment, the deputy knocked loudly several times, but no one answered. The landlord's master key did not work because the door had been locked from the inside. Consequently, a helper forcibly kicked the door open, revealing the defendant standing on the other side of the doorway. Over profanity-laced protests from Henderson, the landlord and his helpers began to pack up Henderson's belongings. The deputy attempted to calm her down, but the defendant's agitation escalated to the point where she pushed one of the men who was packing her electronic components. Upon being informed

she was under arrest, Henderson retreated to the only bedroom in the apartment and slammed the door shut. The deputy followed her and placed her under arrest for interference with official acts.

After other officers arrived to take Henderson to the police station, the deputy began to look at the items in the apartment to determine whether there was anything that should not be set out on the curb, for example, knives, weapons, or pornographic materials. During this process he discovered the following contraband: (1) on top of the refrigerator in the kitchen, a clear plastic bag containing what appeared to be marijuana; (2) on the coffee table in the living room, a homemade "pot pipe",[1] an ashtray with pieces of a blunt[2] in it, and two clear plastic bags, one with a yellowish residue and one with remnants of plant material in it; (3) in the bedroom between the mattresses, a small silver tube of the type used to smoke methamphetamine; (4) in the same bedroom on the headboard, a similar, but larger-diameter, tube with burn marks on the ends, a homemade pipe or smoking device for marijuana made of tinfoil with burn residue, and a clear plastic bag containing what appeared to be methamphetamine; and (5) in an end table in the same bedroom, two bags containing what appeared to be marijuana, a forceps commonly used to smoke marijuana, a small piece of tinfoil commonly used to smoke methamphetamine with burn marks on it, and two outside barrels of ink pens that could be used to snort methamphetamine. The substance found on the refrigerator and the substance found on the headboard were tested and confirmed to be marijuana and methamphetamine, respectively.

These items provided the basis for Henderson's prosecution for two counts of possession of a controlled substance in violation of Iowa Code section 124.401(5) (2001).

Deputy Aspleaf testified at trial that another woman was present in the apartment during these events, Lisa Williams. Williams was cooperative and did not attempt to obstruct the eviction process. She told the deputy that she had only been staying at the apartment for a few days after having a fight with her mother. When the deputy asked her if any of the drugs they found were hers, Williams stated they were not.

The deputy also testified that both Henderson and Williams had prior convictions for possession of marijuana. Henderson had been convicted of this offense in 1998, and Williams' conviction was in 1991.

■ In addressing the sufficiency of this evidence, we first examine the State's burden of proof: "Unlawful possession of a controlled substance requires proof that the defendant: (1) exercised dominion and control over the contraband, (2) had knowledge of its presence, and (3) had knowledge that the material was a controlled substance." *State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). Henderson challenges the sufficiency of the State's proof on the first element: her dominion and control over the marijuana and the methamphetamine.

Because the contraband was not found on the defendant's person, the State sought to prove Henderson's constructive possession of the illegal substances. *See id.* at 138 ("Possession can be either actual

---

1. The officer described a jar with a hole in it through which a piece of tubing runs. The officer testified marijuana is burned in the jar and smoke is inhaled through the tube.

2. A blunt is a hollowed-out cigar that has been filled with marijuana.

or constructive."). "Constructive possession occurs when the defendant has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." *Id.* "The existence of constructive possession turns on the peculiar facts of each case." *State v. Webb,* 648 N.W.2d 72, 79 (Iowa 2002).

Notwithstanding the fact-specific inquiry on this element, inferences are often used to prove constructive possession. *See id.* at 76–79 (discussing history of inferences supporting constructive possession). One such inference of dominion and control arises when the premises on which the illegal substances are found are in the exclusive possession of the accused. *State v. McDowell,* 622 N.W.2d 305, 308 (Iowa 2001). That inference is of no assistance to the State here, however, because at the time of this incident, the premises were shared by Henderson and Williams. *See Bash,* 670 N.W.2d at 138; *State v. Graves,* 668 N.W.2d 860, 877–78 (Iowa 2003). Under these circumstances, the defendant's authority or right to maintain control of the drugs must be established by proof in addition to the fact that the drugs were found in the defendant's apartment. *See Bash,* 670 N.W.2d at 138; *Webb,* 648 N.W.2d at 77, 79. We think the record contains such proof.

There was no suggestion in the evidence that the contraband found in Henderson's apartment belonged to anyone other than Henderson or Williams. We think the jury could have concluded from the very disparate reactions of these individuals to the presence of the deputy on August 22, 2002 that the drugs belonged to Henderson. When the deputy's party entered Henderson's apartment, they were greeted by Henderson's defiant opposition to their presence. She swore at them and insisted that she would move her own belongings. She yelled at them to leave and

physically interfered with their efforts to pack her property. Eventually, she retreated to the bedroom, specifically to the side of the bed where the methamphetamine was found. In contrast, Williams cooperated with the persons moving the defendant's personal belongings and even carried some of Henderson's clothes to Henderson's car.

Henderson's conduct implied guilty knowledge; Williams' conduct did not. *See Webb,* 648 N.W.2d at 79 (stating a defendant's incriminating actions when drugs are discovered support a finding that defendant had right to exercise control over drugs); *State v. Cox,* 500 N.W.2d 23, 25 (Iowa 1993) ("Admissions may be implied by the conduct of the defendant subsequent to a crime . . . when such conduct indicates a consciousness of guilt."). Certainly one could also explain the defendant's response to the situation by the fact that she was the object of a forcible eviction from her residence. On the other hand, Williams' obliging manner was not consistent with one who had something to hide. Moreover, Williams denied the drugs were hers.

Other facts also support a finding that the drugs belonged to Henderson. Illegal substances were found throughout the apartment, together with multiple items of drug paraphernalia, some of which showed signs of use. Although some of these items were in plain view, some were in drawers, or in the case of a pipe used to smoke methamphetamine, between the mattresses. The quantity of drugs and drug paraphernalia in the premises, their widespread disbursement throughout the apartment, and their location in places that would not ordinarily be used by a guest suggest that these items did not belong to a temporary visitor, but rather to the person residing there.

The defendant relies on our decision in *Webb*, where this court held there was insufficient evidence to connect the defendant to the illegal substances found in his apartment. 648 N.W.2d at 82. That case is easily distinguished. In *Webb*, the defendant shared the residence where drugs were found with two other individuals. *Id.* at 75. Although the other occupants of the residence were home at the time of the officers' arrival on the scene, Webb did not get home until the search was well underway. *Id.* When he did arrive, he exhibited no suspicious behavior. *Id.* at 75, 80. Unlike the case before us, there were no circumstances that showed the drugs belonged to the defendant as opposed to the other residents of the apartment.

We conclude there is sufficient evidence in the present case to support a finding that Henderson had the authority or right to exercise dominion and control over the contraband found in her apartment. Therefore, the trial court did not err in denying the defendant's motion for judgment of acquittal.

## II. *Admission of Evidence of Prior Acts.*

Prior to trial, the defendant filed a motion in limine to preclude the State from offering evidence of her conviction for possession of marijuana four years before she was charged with the present offense. Henderson's attorney argued the evidence was irrelevant, and even if relevant, its relevancy was substantially outweighed by the danger of unfair prejudice. At a hearing on this motion, the State contended the evidence was offered to establish Henderson's knowledge that the substance on top of her refrigerator was marijuana. *See Bash*, 670 N.W.2d at 137 (stating, in a possession case, that State must prove the defendant "had knowledge that the material was a controlled substance"). In re-

sponse, Henderson's trial counsel said: "I don't believe anyone is saying Miss Henderson doesn't know what marijuana is. She is saying the marijuana in her residence wasn't hers." The district court reserved ruling on this issue until trial. At that time the defendant's objection to the prior-acts evidence was overruled without explanation.

"We review rulings on the admission of evidence of prior bad acts for an abuse of discretion." *State v. White*, 668 N.W.2d 850, 853 (Iowa 2003). "An abuse of discretion occurs when the trial court 'exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable.'" *State v. Greene*, 592 N.W.2d 24, 27 (Iowa 1999) (citation omitted). Even though an abuse of discretion may have occurred, reversal is not required if the court's erroneous admission of evidence was harmless. *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004); Iowa R. Evid. 5.103($a$).

"Evidence which is not relevant is not admissible." Iowa R. Evid. 5.402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. Even relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. Iowa R. Evid. 5.403. "[P]robative value" gauges the strength and force of the tendency of the challenged evidence to make the consequential fact more or less probable. *State v. Plaster*, 424 N.W.2d 226, 231 (Iowa 1988). Evidence that "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action [that] may cause a jury to base its decision on something other than the es-

tablished propositions in the case" is unfairly prejudicial. *Id.* at 231–32 (citations omitted); *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 403.04[1][b], at 403–38 to 403–42 (Joseph M. McLaughlin ed., 2004). When the State seeks to offer evidence of prior acts, the prosecutor must "articulate a valid, noncharacter theory of admissibility for admission." *Sullivan,* 679 N.W.2d at 28. That is because "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Iowa R. Evid. 5.404(*b*).

■ As noted above, the prosecutor offered the challenged evidence to show the defendant's knowledge of the nature of the substance found in her kitchen. Although the defendant contends her prior marijuana conviction does not tend to demonstrate she knew what the drug was, we disagree. We think her prior conviction makes it more probable that Henderson knew the material on top of her refrigerator was a controlled substance, namely, marijuana. *See State v. Hall,* 41 Wash.2d 446, 249 P.2d 769, 772 (1952) ("Knowledge of what is marijuana when once acquired is not likely to be forgotten."). Thus, the State articulated a valid, noncharacter basis for admission of this evidence. Therefore, the court did not err in determining the prior-acts evidence was relevant.

■ We turn, then, to the trial court's apparent decision that the probative value of this evidence was not substantially outweighed by its prejudicial effect. Our review of the trial court's exercise of discretion in this case is hampered by the court's failure to articulate how it balanced the probative value of this evidence against its prejudicial impact. Nonetheless, when we apply the pertinent factors, we conclude the unfair prejudice arising from the admission of this evidence substantially out-

weighed its minimal probative value. *See Government v. Archibald,* 987 F.2d 180, 186 (3d Cir.1993) (stating when trial judge fails "to explain the grounds for denying a Rule 403 objection, [reviewing court] may undertake to examine the record").

■ In weighing probative value against unfair prejudice, the court should consider the following factors: (1) the actual need for the evidence in view of the issues and other available evidence, (2) whether there is clear proof showing the other crimes were committed by the accused, (3) the strength or weakness of the prior-acts evidence in supporting the issue sought to be proven, and (4) the degree to which the jury will probably be improperly influenced by the evidence. *State v. Rodriquez,* 636 N.W.2d 234, 240 (Iowa 2001). The second and third factors support admission of the challenged prior-acts evidence in this case. There is clear proof Henderson committed a prior act of possessing marijuana, as evidenced by her conviction, and we think her prior possession of this illegal substance is persuasive evidence she knew the material in the bag on top of her refrigerator was marijuana.

On the other hand, the actual need for this evidence was undeniably slight in view of the contested issues in the case and the other evidence available to the prosecution. Henderson's defense was not that she thought the marijuana was a household herb such as marjoram or thyme; her defense was simply that the drugs belonged to Williams, not her. Moreover, there was abundant evidence found in the apartment that marijuana had been smoked there, indicating the owner of the bag of marijuana knew what it was. Under these circumstances, the need for the prior-acts evidence was marginal at best. *See United States v. Schwartz,* 790 F.2d 1059, 1062 (3d Cir.1986) (holding prior acts of selling cocaine had marginal relevance

to knowledge or intent elements of current charge of selling cocaine where defendant's sole defense was that he had not sold the drugs in question).

Balanced against the insignificant need for the prior-acts evidence was the strong prejudicial impact of this information. As we said in *State v. Castaneda,* " 'When jurors hear that a defendant has on earlier occasions committed essentially the same crimes as that for which [the defendant] is on trial, the information unquestionably has a powerful and prejudicial impact.' " 621 N.W.2d 435, 441 (Iowa 2001) (citation omitted); *accord Schwartz,* 790 F.2d at 1062 (holding prejudice from evidence of prior cocaine sales in prosecution for distributing cocaine "was very great"). Because we conclude the prejudicial effect of the prior-acts evidence outweighed its weak probative value, we hold the court abused its discretion in admitting this evidence.

■ The next step in our analysis is to determine whether this error obligates us to reverse the defendant's conviction. Reversal is required in cases of nonconstitutional error when it appears "that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice." *Sullivan,* 679 N.W.2d at 29; *see also* Iowa R. Evid. 5.103(*a*). In applying this test, "we presume prejudice—that is, a substantial right of the defendant is affected—and reverse unless the record affirmatively establishes otherwise." *Sullivan,* 679 N.W.2d at 30 (emphasis omitted).

■ The trial court in the present case read a limiting instruction to the jury prior to allowing Deputy Aspleaf to testify that the defendant had a prior conviction for possession of marijuana. The jury was told this evidence was "for the limited purpose of determining whether or not the defendant had knowledge, in this case, that

any substance she possessed, if she did possess any, was marijuana." The court also admonished the jurors that they could "not use this evidence to decide whether the defendant carried out the acts involved in the crime charged in this case" and they could "not convict a person simply because [they] believe[d] [the defendant had] committed a similar act in the past." Notwithstanding this instruction, we do not think the record in this case affirmatively establishes a lack of prejudice.

"When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered[:] to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.' "

*Castaneda,* 621 N.W.2d at 441–42 (citation omitted). In *Castaneda* the trial court improperly admitted evidence of the defendant's prior sexual acts in the defendant's trial on charges of sexual abuse and indecent contact with a child. *Id.* at 438–39. This court held that even a proper limiting instruction would not have removed the unfair prejudice resulting from the improper testimony: The "testimony was so inherently prejudicial that no amount of admonition by the court was sufficient to remove the prejudice." *Id.* at 442.

We reach the same conclusion here with respect to admission of the defendant's prior drug conviction. While a limiting instruction can theoretically minimize the prejudice of evidence of prior acts, the effectiveness of such an instruction is greatly diminished where the prior act is the same crime at issue in the current prosecution and other evidence that would support a conviction is not overwhelming. *See State v. Daly,* 623 N.W.2d 799, 803 (Iowa 2001) (holding evidence that defendant had been convicted of same crime

four years earlier "could very likely have a substantial effect on a jury, which, although instructed not to do so, could reasonably be expected to misuse the evidence as substantive proof of guilt"); *cf.* *State v. Breitbach,* 488 N.W.2d 444, 448 (Iowa 1992) (stating in a similar context, "to the extent that the State's evidence on the matter in question is strong, the prejudicial effect of the challenged testimony will be correspondingly less, and, therefore, a cautionary instruction will suffice to insure the defendant receives a fair trial"). That is the situation here. It would be extremely difficult for jurors to put out of their minds knowledge that the defendant had possessed marijuana in the past and not allow this information to consciously or subconsciously influence their decision. *See Sullivan,* 679 N.W.2d at 24 ("[E]ven if the court gives a carefully crafted instruction limiting the significance of [prior-bad-acts] evidence, prejudice to the defendant is 'well-nigh inescapable.'" (Citation omitted.)). The very reason prior-bad-acts evidence is prejudicial is its persuasiveness that if a person possessed marijuana before, she probably possessed it again. *See Sullivan,* 679 N.W.2d at 24 ("Empirical studies have confirmed the courts' fear that juries treat bad-acts evidence as highly probative.").

In addition, the evidence of guilt in this case was not overwhelming. The State did not have the benefit of any of the traditional inferences of constructive possession to prove the marijuana and methamphetamine belonged to the defendant. Additionally, there were two persons living in the apartment when the drugs were confiscated. The primary circumstantial evidence that the drugs belonged to Henderson and not to her temporary guest—the defendant's obstructive conduct when the officer served the writ of eviction—was capable of being explained by the defendant's understandable anger at being evicted from her apartment.

We conclude this record does not affirmatively establish a lack of prejudice. Therefore, we reverse the defendant's convictions for possession of marijuana and possession of methamphetamine. *See id.* at 30 (concluding evidence that defendant had committed same crime in the past was so inherently prejudicial that reversal was required); *Daly,* 623 N.W.2d at 803 (same). This case is remanded for a new trial at which evidence of the defendant's prior conviction shall not be admitted.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except LAVORATO, C.J., who concurs specially and WIGGINS, J., who joins the special concurrence.

LAVORATO, Chief Justice (concurring specially).

Although I agree with the result the majority reaches, I disagree in how it reached that result. My disagreement is this: Contrary to the majority's conclusion, the State did not articulate a valid, noncharacter theory of admissibility for admission of the defendant's prior conviction for possession of marijuana. Therefore, it was error to admit such evidence. For that reason, we never reach the balancing question under Iowa Rule of Evidence 5.403. My reasons for saying so follow.

Iowa Rule of Evidence 5.404(*b*) controls admissibility of bad-acts evidence. It provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible

for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Iowa R. Evid. 5.404(*b*). As we noted in *State v. Sullivan*, "[r]ule 5.404(*b*) codifies our common law on bad-acts evidence and is the counterpart to Federal Rule of Evidence 404(b)." 679 N.W.2d 19, 23 (Iowa 2004).

Courts "have long followed the rule against admitting bad-acts evidence to show 'that the defendant has a criminal disposition in order to generate the inference that he committed the crime with which he is charged.'" *Id.* (citation omitted). They have done so because "'[a] concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is.'" *Id.* (citation omitted); *see also United States v. Daniels*, 770 F.2d 1111 (D.C.Cir.1985) ("[O]nce evidence of prior crimes reaches the jury, 'it is most difficult, if not impossible, to assume continued integrity of the presumption of innocence.'" (citation omitted)).

The policy against not admitting bad-acts evidence is not because such evidence has no probative value, but because it has very substantial value not recognized in the law. *Sullivan*, 679 N.W.2d at 24. This is especially so, as the majority points out, when *similar* bad-acts evidence is introduced. Such evidence has a powerful and prejudicial impact as well as presenting the great likelihood that the jury will use the evidence exactly for the purpose it may not be used—to convict the defendant because he or she is a bad person. *Id.* at 30. So it is not surprising that empirical studies confirm the fact that juries treat bad-acts evidence as highly probative. *Id.* at 24; I John W. Strong, *McCormick on Evidence* § 190, at 659 n. 5 (5th ed. 1999) (citing study that determined "when a de-

fendant's criminal record is known and the prosecution's case has contradictions, the defendant's chances of acquittal are 38% compared to 68% otherwise") [hereinafter *McCormick on Evidence*]. They do so because common sense tells a juror that one who has acted criminally in the past probably may act the same way again. However, contrary to popular belief, empirical studies also show that a person's character is not a good indicator of a person's actions on a given occasion. *Sullivan*, 679 N.W.2d at 24.

We recognize that rule 5.404(*b*) is an exclusionary rule. *Id.*; *State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987). This means that evidence of a defendant's other bad acts will be excluded under the first sentence of the rule when such evidence is offered by the prosecution to prove that the defendant has a criminal disposition or a propensity to commit a crime. *Sullivan*, 679 N.W.2d at 25. The second sentence of the rule creates an exception for evidence offered not to prove character but to prove some relevant issue in the case, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* at 24–25. However, one writer would not characterize the second sentence as a list of exceptions:

[T]here are no exceptions to the forbidden inference of rule 404(b). It may never be used by a litigant.... The second sentence of rule 404(b) merely contains a suggestive, nonexhaustive list of traditionally applied theories of relevance that do not capitalize upon the prohibited inference designated in the first sentence of the rule.

Glen Weissenberger, *Making Sense of Extrinsic Act Evidence: Federal Rule of Evidence 404(b)*, 70 Iowa L. Rev. 579, 595 n. 47 (1985) [hereinafter Weissenberger].

This writer also suggests that the first sentence of rule 5.404(*b*)

makes sense because ... the rule represents a recognition of the unfairness of placing the accused in a position of rebutting extrinsic antisocial acts when directed against him pursuant to a propensity theory. More than just creating a risk of the jury reacting emotionally and punitively to an accused's past misdeeds, when confronted with the act-propensity-act inference the accused is placed in the posture of arguing to the jury that its collective common sense should be disregarded. The accused has little basis for rebutting the evidence except by challenging the force of the propensity inference itself, and the greater its probative value, the more difficult it is for him to bring himself within the ever narrowing class of persons in regard to whom the inference is conceivably inapplicable. The accused must try to demonstrate that the very notion of probative value is inapplicable to him; he is forced to prove that his case is the anomaly.

Weissenberger at 608. This becomes even more problematic for the defendant in view of stock criminal instructions advising the jury to use its common sense and experience in reaching its verdict. I Iowa Criminal Jury Instructions Nos. 100.6 (Direct/Circumstantial Evidence), 100.7 (Credibility of Witnesses) (1988) (stating in No. 100.6: "In considering the evidence, make deductions and reach conclusions according to reason and common sense.") (stating in No. 100.7: "Decide the facts from the evidence. Consider the evidence using your observations, common sense and experience.").

Bad-acts evidence as to *mens rea* (state of mind) and which is unconnected to the crime charged is always evidence of propensity because it

"requires the jury to draw an intermediate inference as to the accused's disposition or tendency to form a particular mens rea. The charged offense occurred at one time and place while the uncharged crime ordinarily occurs at a different time and place. To bridge the temporal and spatial gap between the two incidents, the prosecutor must assume the accused's propensity to entertain the same intent in similar situations. That assumption is the inescapable link between the charged and uncharged crimes. The trier of fact can reason from the starting point of the uncharged crime to a conclusion about the mens rea of the charged crime only through an intermediate assumption about the accused's character or propensity."

*Sullivan,* 679 N.W.2d at 26 (citation omitted).

To eliminate or at least reduce the risk that the jury will rely entirely on the defendant's propensity, we require prosecutors to articulate a valid, noncharacter theory of liability *before* the admission of the bad-acts evidence. *Id.* at 28. Implicit in this requirement are two conditions: First, "the evidence must be relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts, and (2) there must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* at 25.

Without detailing them, we expressly stated that there are some factual situations when the prosecutor can easily develop a valid, noncharacter theory of admissibility. *Id.* at 28. For example, when the defendant is charged with possession of marijuana and defends on the basis that he or she was unaware the substance in his or her possession was marijuana, evidence of prior acts establishing that the defendant was in possession of marijuana is admissible regarding *mens rea.* *See* Edward J. Imwinkelried, *The Use of Evidence of an*

*Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines Which Threaten to Engulf the Character Evidence Prohibition,* 51 Ohio St. L.J. 575, 596–98 (1990) [hereinafter Imwinkelried].

To avoid the danger that similar bad-acts evidence presents, the *mens rea* issue must be in "bona fide dispute," and the prosecutor must have a "bona fide need to resort to the potentially prejudicial uncharged misconduct evidence." *Id.* at 598 (suggesting ways a defendant could affirmatively dispute *mens rea,* for example, asserting that at the time of the act, defendant had an innocent state of mind, or a defense witness may give testimony calling into question the existence of *mens rea,* or cross-examination by defense counsel of a state's witness who gives testimony on *mens rea* could put the existence of *mens rea* in dispute); *see also* I *McCormick on Evidence* § 190, at 671–72 ("[T]he connection between the evidence and the permissible purpose should be clear, and the issue on which the other crimes evidence is said to bear should be the subject of a genuine controversy. For example, if the prosecution maintains that the other crime reveals defendant's guilty state of mind, then his intent must be disputed. Thus, if the defendant does not deny that the acts were deliberate, the prosecution may not introduce the evidence merely to show that the acts were not accidental." (footnotes omitted)). Otherwise the jury will more than likely concentrate on the defendant's propensity.

Although all bad-acts evidence has some element of propensity, the jury is less likely to concentrate on propensity if there is a bona fide dispute on *mens rea.* When the State is allowed to offer bad-acts evidence on an element that is really not in dispute, the only relevancy of such evidence is to show the defendant's criminal disposition or propensity to commit the very crime for which the defendant is on trial. Such a result "is a dangerous one threatening to emasculate the character evidence prohibition." Imwinkelried, 51 Ohio St.L.J. at 579.

Acknowledging the danger that similar bad-acts evidence presents, one federal court has suggested what I believe is a sensible approach for trial courts to follow when such evidence is offered. *See United States v. Colon,* 880 F.2d 650 (2d Cir.1989). First, the trial court must decide whether the evidence is offered for a proper purpose. *Id.* at 656. That purpose must be something other than to prove the defendant's bad character or criminal propensity. *Id.* Proper purposes are those listed in the second sentence of rule 5.404(*b*). *Id.* Second, if such evidence is offered for such a proper purpose, the court has to then determine whether the evidence is relevant to an issue in the case and whether the evidence satisfies the probative-prejudice balancing test in Federal Rule of Evidence 403. *Id.* Last, if requested, the court must give an appropriate limiting instruction to the jury. *Id.*

Strictly speaking, a not guilty plea puts the defendant's state of mind in issue because the State has the burden to prove it. *Id.* Nevertheless, in some situations, the nature of the defendant's defense may show that knowledge and intent, while technically at issue, are really not in dispute. *Id.* In those circumstances, the court in *Colon* mandated that a defendant can keep the other bad-acts evidence out by

"express[ing] a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against

the defendant because it is not disputed."

*Id.* at 657 (recognizing "distinction between defense theories that claim that the defendant did not do the charged act at all, and those that claim that the defendant did the act innocently or mistakenly" and concluding only the latter truly raise a disputed issue of intent) (citation omitted); *see also* I *McCormick on Evidence* § 190, at 671 n. 66 (" 'The mere theory that a plea of not guilty puts everything material in issue is not enough. . . . The prosecution cannot credit the accused with fancy defences in order to rebut them at the outset with some damning piece of prejudice.' " (citation omitted)). Thus, under the *Colon* approach, intent is not placed in issue by a defense that the defendant did not do the act charged at all. When a defendant unequivocally relies on such a defense, other similar bad-acts evidence is not admissible.

The *Colon* approach is a sensible one. It keeps the highly prejudicial, similar bad-acts evidence from the jury while at the same time alleviating the prosecutor from having to prove an element not in dispute. Imwinkelried, 51 Ohio St. at 599–601.

Some twenty-four years ago, this court eschewed the *Colon* approach in a case involving delivery of a controlled substance (cocaine) for profit. *See State v. Gibb*, 303 N.W.2d 673 (Iowa 1981). The State relies heavily on *Gibb* to uphold the district court's ruling, and *Gibb* underlies the majority's relevancy analysis. In *Gibb*, the defendant argued that because he did not contest knowledge but only contested whether he delivered the substance for a profit, evidence that he possessed a controlled substance on the day of his arrest for which he was not charged should not have been admitted. *Id.* at 682. This court rejected the argument, holding that the "[d]efendant's concession of an issue

does not preclude the State from presenting evidence to establish that element of the crime." *Id.* I would disavow this holding for several reasons.

First, the opinion is devoid of any analysis. The opinion falls into that category of cases that completely ignores the first sentence of rule 5.404(*b* ) by automatically including similar bad-acts evidence whenever the prosecutor offers such evidence to prove *mens rea.* Imwinkelried at 578. As one writer observed, "opinions in the hundreds of cases on this subject are less than satisfying," and "[f]or the most part, they are composed simply of conclusory statements without any supporting analysis." Abraham P. Ordover, *Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b), and 609(a)*, 38 Emory L.J. 135, 156 (1989) [hereinafter Ordover]; *see also Ross v. State*, 276 Md. 664, 350 A.2d 680, 684–85 (1976) (similarly criticizing federal cases for automatically admitting similar bad-acts evidence on intent without any analysis). Such an approach substantially undermines the character evidence prohibition and threatens to emasculate that prohibition. Imwinkelried at 578, 579; *see also* Ordover, 38 Emory L.J. at 152–53 (making the point that intent is an element of virtually every crime and if the intent exception warranted admission of similar bad-acts evidence simply to prove the intent element of the offense on trial then the exception would swallow the rule). In addition, the *Gibb* approach would encourage courts to rationalize admitting routinely evidence of any similar bad-acts evidence as to *mens rea* as a matter of course without regard to whether the State really needed it. Imwinkelried, 51 Ohio St. at 580; *see also State v. Bly*, 215 Kan. 168, 523 P.2d 397, 404 (1974) ("We wish to emphasize in passing that if trial judges content themselves with merely determining whether the particular evidence of oth-

er crimes fits into one of the particular exceptions, they may lose sight of the underlying policy of protecting the accused against unfair and - sometimes unbridled prejudice."), *overruled on other grounds by State v. Mims,* 220 Kan. 726, 556 P.2d 387, 391 (1976).

Second, the *Gibb* holding is inconsistent with our later recognition in *Barrett,* 401 N.W.2d at 187 and reaffirmed in *Sullivan,* 679 N.W.2d at 25, that before evidence of bad-acts evidence may be admitted such evidence must be relevant and material to a *legitimate* issue in the case other than propensity to commit wrongful acts. As one writer points out,

> [w]here intent is contested and is the central issue in the case, the basis for admitting the evidence is very high. However, where intent is merely a formal issue derived from the elements of the offense, the argument for receiving the evidence falters. In addition, where evidence of other crimes 'can become probative with respect to intent only after an inference of predisposition has been drawn, the argument for admission is at its weakest, for the distinction between intent and predisposition then becomes ephemeral.'
>
> Some courts are scrupulous about keeping extrinsic crime evidence from the jury in these cases on a variety of grounds. First, the evidence . . . is plainly irrelevant; second, it is unduly prejudicial, and third, the government does not need the evidence.

Ordover at 153 (footnotes omitted); *see also Bly,* 523 P.2d at 404 (elements of intent, knowledge, etc. must be substantially in issue before evidence of other crimes is admissible to prove such elements); *State v. Sutherland,* 92 Ohio App.3d 840, 637 N.E.2d 366, 371 (1994) (the defendant's past behavior involving drugs had no relevancy to whether he knew that there was marijuana hidden under hood of vehicle in which he was riding); *State v. Hall,* 41 Wash.2d 446, 249 P.2d 769, 772 (1952) (knowledge was in issue when the defendant asserted that he lacked knowledge that the plants growing on his premises were marijuana). If similar bad-acts evidence is admitted on the issue of *mens rea,* whether or not contested by the defendant, that would have the effect of swallowing rule 5.404(*b*).

Third, by ignoring the first sentence of rule 5.404(*b*), *Gibb* is inconsistent with our recognition that the rule is an exclusionary rule rather than an inclusionary one. *See Sullivan,* 679 N.W.2d at 24; *Barrett,* 401 N.W.2d at 187. Under the exclusionary view, similar bad-acts evidence is presumptively inadmissible and its probative value is presumed to be outweighed by the prejudicial effect unless admissible to prove a legitimate issue in the case. *See Drew v. United States,* 331 F.2d 85, 89–90 (D.C.Cir. 1964). In contrast, under *Gibb,* such evidence is presumptively admissible if offered on one of the exceptions in rule 5.404(*b*). 303 N.W.2d at 682. The presumptively admissible view has the effect of allowing inherently prejudicial evidence to become routinely admissible without regard to whether the State really needs it. Allowing a prosecutor to argue that similar bad-acts evidence is relevant on *mens rea* says nothing about *how* such evidence is relevant—that is, by means of what inferences such evidence proves *mens rea.*

Fourth, the State generally does not need the similar bad-acts evidence to prove *mens rea* when, as here, other evidence is available to support an inference of *mens rea.* As the majority points out, there was abundant evidence found in the apartment that marijuana had been smoked there, indicating the owner of the bag of marijuana *knew* it was marijuana.

Last, I think *Sullivan* implicitly overruled *Gibb.* As mentioned, *Gibb* held that

the defendant's concession of an issue regarding *mens rea* did not preclude the State from offering evidence of cocaine found on the defendant's person when the police arrested him for prior drug transactions for which he was charged. There was no specific criminal charge for the cocaine found on the defendant's person.

In *Sullivan,* the defendant was charged with possession of marijuana with intent to deliver. At trial, the court admitted evidence of the defendant's prior conviction for a similar offense on the issue of intent and knowledge. Although the defendant in *Sullivan* did not expressly concede the issue on intent and knowledge, the case was defended on the theory that the drugs on the premises *were not his.* Implicitly, therefore, knowledge and intent were *not* in dispute. Notwithstanding the holding in *Gibb,* we held in *Sullivan* that the prior conviction was not admissible on the *mens rea* elements because the State failed to articulate a valid, noncharacter theory of logical relevance to support an inference on these elements.

In this case and in *Sullivan,* the prosecution offered past convictions similar to the offense on trial. The issue in both cases was not whether there was the appropriate *mens rea* (intent to deliver and knowledge in *Sullivan* and knowledge that the substance was marijuana in this case). Rather, the issue in both cases was whether the defendant owned the drugs. Therefore, there was no legitimate issue to support admission of the prior conviction in *Sullivan,* just, as we shall see, there was no legitimate issue to support admission of such evidence in this case. For these reasons, I think *Sullivan* controls here.

In this case, the defendant filed a motion in limine to exclude her prior conviction for possession of marijuana, which was similar to the charge she was facing. In a pretrial hearing on the motion, the prose-cutor announced that he was offering the challenged evidence to establish that the defendant had knowledge that the substance she possessed on the date of the alleged crime was marijuana. The defendant's counsel responded by saying:

> I don't believe anyone is saying Miss Henderson doesn't know what marijuana is. She is saying the marijuana in her residence wasn't hers.

The district court overruled the motion, stating the State had to prove that the defendant not only possessed marijuana but also that she knew it was marijuana. The court made its ruling without requiring the prosecutor to make clear *how* the prior conviction was relevant on the issue of knowledge.

The record does not reflect any attempt by the defense counsel to inject the issue of knowledge either by direct testimony or cross-examination. Rather, by his cross-examination, it was clear that counsel was attempting to show that the marijuana belonged to the guest rather than to the defendant. In short, the defendant's defense was that she did not commit the act at all. In these circumstances, although the defendant's not guilty plea technically put knowledge in issue, knowledge was not in dispute. For this reason, knowledge was not a legitimate issue. Because knowledge was not a legitimate issue, the only reason the State had for offering the defendant's prior conviction was to show her propensity to commit the very crime for which she was on trial. Therefore proof of the conviction of a similar crime was not relevant on the issue of knowledge. Moreover, there was sufficient circumstantial evidence regarding knowledge to take the case to the jury, making it unnecessary for the State to use the defendant's prior conviction of a similar crime.

On appeal, the defendant again contends that her defense was not that she does not

know what marijuana is but rather that the marijuana simply was not hers. The issue then was: Whose marijuana was it? Not whether the defendant knew the item in question was marijuana. In this regard, I think the majority misconstrues the defendant's contention on appeal when it says that her contention was that the prior marijuana conviction does not tend to demonstrate she knew what the drug was. Taken in context, what the defendant meant was that the prior conviction was not relevant on the issue of knowledge because knowledge was not disputed. As mentioned, her contention in the trial court and again on appeal is that the marijuana was not hers.

Because knowledge was not in dispute, the only reason the State had to offer the prior conviction was to show the defendant's propensity to commit the very crime for which she was on trial. Therefore the State had no valid, noncharacter theory of logical relevance to support admission of the prior conviction. I would hold that this evidence simply was not legally relevant.

WIGGINS, J., joins this special concurrence.