# IN THE COURT OF APPEALS OF IOWA

No. 16-1453
Filed December 6, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JONATHAN DAVID GORDON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Lars G. Anderson
(trial) and Patrick R. Grady (sentencing), Judges.


        Jonathan David Gordon appeals from his conviction and sentence for third-
degree sexual abuse as an habitual offender.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant
Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney
General, for appellee.


        Considered by Danilson, C.J., Tabor, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Jonathan David Gordon appeals from his conviction and sentence for third-degree sexual abuse as an habitual offender pursuant to a verdict of guilty after a trial by jury.  We affirm.

**I. FACTUAL BACKGROUND.**

Katie and Gordon were involved in a relationship that produced a child.  Except for maintaining contact with his child, Katie testified the relationship with Gordon had otherwise ended and she no longer wanted a sexual relationship with him.  There had been a physical altercation between them that had occurred in January 2014, when she was pregnant with Gordon's child.  Katie and Gordon got into an argument, and Gordon physically carried her upstairs to her bedroom where he held her against her will for thirty minutes.  She repeatedly tried to leave but, as a result of her efforts, injured her hand.  The police were called because of the incident, Gordon was jailed for a time, and a no-contact order was entered.

In spite of the no-contact order, Katie continued to have contact with Gordon but claimed she advised Gordon that she did not want to continue a sexual relationship with him.  Gordon testified that in spite of a no-contact order, he moved in with Katie and continued to have sexual relations with her until March or April 2015.  Katie admitted that her sexual relationship with Gordon continued until March 2015.  Because of the January 2014 incident, Katie became fearful of Gordon and felt she was powerless to resist him.  She was afraid of what would happen if she disagreed with him or refused what he wanted.

On October 11, 2015, Katie picked up Gordon so he could visit with their eighteen-month-old child.  After picking up Gordon, Katie took him to her home.

She went to her bedroom to take a nap while Gordon visited with the child. Katie testified that ten or fifteen minutes later, Gordon came in and sat on the bed. He pulled off the covers and began pulling her shorts down. Katie resisted the removal of her shorts, but Gordon continued and pulled down her shorts anyway. Gordon pushed her legs apart and began to have oral sex with her. She protested and said "stop" and "no," but he continued. Their son came into the room, and Gordon testified that he thought that Katie's "no" related to the presence of the child; accordingly, he removed the child to another room. Gordon returned to the bedroom, pulled a blanket over them, and began having vaginal intercourse. Katie quit resisting and started crying. She testified she continued to tell him "no" and "stop." When Gordon finished, he dressed, and Katie took him home.

When Katie got back to her place of residence, she talked with a friend on the telephone and then went to the police station, where she filed a written statement. Thereafter, Katie went to a hospital for examination. Sherry Kovar, the nurse medical examiner, testified Katie had swollen, puffy eyes, complained of nausea and a headache, and was still tearful. No physical injuries were noted.

The next day, Katie met with Detective Ruben Ross, who suggested that she record a telephone call with Gordon to attempt to get an admission of a forcible sex act. The phone call was made and recorded by the detective. Gordon admitted to the sex act but denied his actions were unwelcome or against Katie's will. He did admit she made a token resistance to his act of pulling down her shorts and said "no" once when he was involved in the oral sex but not when he was involved in the vaginal sex. Detective Ross interviewed Gordon, and Gordon's

statements during the interview were substantially consistent with the statements that he had made during the telephone conversation.

Gordon was arrested and charged with sexual abuse in the third degree—habitual offender. The matter went to a jury trial on June 21, 2016. Prior to the trial, the State moved to have the January 2014 incident admitted as a prior-bad-act exception to explain why Katie did not significantly physically resist Gordon. Gordon filed a motion in limine to have evidence of the prior domestic assault excluded from the record as prior-bad-act evidence. *See* Iowa R. Evid. 5.404(b). The court ruled that the prior incident was admissible but qualified its admission by instructing the jury that the prior incident could only be used to determine whether Gordon's actions on October 11, 2015, were by force or against the will of Katie but not for the purpose of determining whether the October 11 incident actually occurred. Before the case was submitted to the jury, Gordon admitted to prior felony convictions for purposes of the habitual offender enhancement.

The only issue raised in the appeal became whether the trial court erred in admitting evidence of the prior domestic assault against Katie.

## II. PRESERVATION OF ERROR.

The State does not contest that the court's ruling on the motion in limine preserved the matter at issue.

**III. SCOPE OF REVIEW.**

We review evidentiary rulings for abuse of discretion. *State v. Henderson*, 696 N.W.2d 5, 10 (Iowa 2005). An abuse of discretion exists when a court exercises discretion on grounds that are clearly untenable or to an extent unreasonable. *Id.*

**IV. DISCUSSION.**

The applicable rule is as follows:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity or absence of mistake or accident.

Iowa R. Evid. 5.404(b) (2015). The above rule recognizes the clear danger of bad acts evidence. In applying the above rule, we have adopted a two-step analysis for determining its admissibility. *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). The first step is to determine whether the offered evidence is otherwise admissible. *Id.* In order to determine whether or not it is otherwise admissible, we must consider whether the evidence offered is relevant and material to a legitimate issue other than a propensity to commit a wrongful act and that the person against whom the proffered testimony is offered did in fact actually commit the bad act. *Id.* The second step requires the court to determine if the probative value of the bad act evidence is substantially outweighed by the danger of unfair prejudice. *Id.*

Gordon's defense was his assumption of consent because of Katie's lack of physical resistance. It is not necessary to establish physical resistance of a person to prove sexual abuse. Iowa Code § 709.5 (2015). The surrounding circumstances are to be considered. *Id.* Fear of the perpetrator is a circumstance

that can be used as a substitute for physical resistance.  *State v. Bayles*, 551 N.W.2d 600, 607 (Iowa 1996).

The commission of the January 2014 domestic abuse was firmly established and not disputed.  Based on Gordon's defense of lack of physical resistance, Katie's fear of Gordon as a result of the prior incident was probative evidence of the basis of her fear.  Accordingly, it was relevant and constituted a legitimate purpose for the introduction of evidence of the prior bad act.  There was an "articulable noncharacter theory of logical relevance" as discussed by *Sullivan*, 679 N.W.2d at 28.  The prior bad act is such that it can be considered for admissibility.

Determining whether the probative value of the evidence substantially outweighs the danger of unfair prejudice is more problematic.  The resolution of the issue is somewhat subjective, and there is no clear line of demarcation.  Clearly, some prejudice could result from testimony of a previous domestic abuse of the same victim.

One of the factors we consider in determining whether the probative value outweighs the danger of unfair prejudice is the need for the prior bad act evidence.  *State v. Rodriquez*, 636 N.W.2d 234, 242 (Iowa 2001).  Besides Katie's own testimony of fear, the only evidence of the source of the fear that caused her to not physically resist was the prior domestic abuse.  A second factor is the evidence's relevance to the existing issues before the jury.  *See generally id.* at 243.  To the extent the prior bad act tended to prove Gordon acted in the same manner, Gordon's actions on October 11 were never disputed and were not an issue.  Gordon's defense was consent, which he attempted to establish by Katie's lack of

physical resistance. The direct testimony regarding the prior bad act was limited, and the prior bad act did not involve a committed or threatened sex act by force. The purpose and focus of the evidence was Katie's actions based on her fear, which resulted in a lack of physical resistance, and did not specifically refer to Gordon's actions on October 11. There is a clear, articulable "noncharacter theory of logical relevance" as discussed in *Sullivan,* 679 N.W.2d at 28.

Finally, the court gave a limiting instruction to the jury, restricting the consideration of the "bad act" to determining whether the act was by force or against the will of Katie and stating that it could not be used to establish Gordon actually committed the act itself. Jurors are presumed to follow the court's instructions. *State v. Praker*, 663 N.W.2d 894, 915 (Iowa 2003).

We cannot say the trial court's admission of the prior bad act was clearly untenable or to an extent unreasonable, which would be required to declare the prior "bad act" inadmissible. We affirm.

**AFFIRMED.**