# IN THE SUPREME COURT OF IOWA

No. 07–1617

Filed May 1, 2009

**STATE OF IOWA,**

Appellee,

vs.

**BRADLEY ALLEN REYNOLDS,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Lyon County, Robert J. Dull, Judge.

Defendant challenges district court's admission of prior-bad-acts evidence and its jury instructions. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Martha M. McMinn, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Sheryl Soich, Assistant Attorney General, and Carl J. Petersen, County Attorney, for appellee.

**STREIT, Justice.**

Outside of the pool hall in Rock Rapids, Brad Reynolds and Dan Kramer got into a fight. Kramer was injured, and Reynolds was arrested for assault. Before trial, the district court entered an evidentiary ruling allowing the State to introduce evidence that Reynolds had previously threatened and assaulted Kramer. At trial, Kramer testified to eleven past incidents with Reynolds. Before the submission of the case to the jury, Reynolds requested jury instructions regarding the prior-bad-acts evidence and his character for peacefulness. The court denied Reynolds' request for the instruction on character and gave a modified version of the prior-bad-acts instruction. The jury found Reynolds guilty of assault causing bodily injury. Reynolds appealed, and the court of appeals reversed. Even though the prior-bad-acts evidence was relevant to Reynolds' motive on the night in question, it was prejudicial error to admit the prior bad acts since the danger of unfair prejudice outweighs their probative value. We therefore vacate the court of appeals' decision, reverse the judgment of the district court, and remand the case.

### I. Background Facts and Prior Proceedings.

On September 27, 2006, Dan and Maggie Kramer were at the pool hall in Rock Rapids drinking beer and playing pool. Brad Reynolds, Maggie's ex-husband, stopped in to chat with a friend. Dan Kramer and Reynolds had a history of animosity between them because Maggie had started dating Kramer while she was still married to Reynolds. Kramer approached Reynolds to ask him a question about Reynolds' and Maggie's son. Reynolds indicated he did not want to talk to Kramer. Later, Reynolds and Kramer got into an altercation outside the pool hall. Reynolds invited Kramer to take a swing at him. Reynolds claims he turned to leave and Kramer hit him in the back of the head. Reynolds hit

Kramer three times, and Kramer called 911. Kramer sought medical treatment and was diagnosed with a sprained jaw, a minor concussion, and a probable broken nose. Reynolds was charged with assault causing bodily injury.

Before trial, the State requested an evidentiary ruling permitting it to present evidence Reynolds had "harassed, threatened, assaulted, and intimidated" Kramer on several occasions in the past in order to demonstrate Reynolds' "motive, intent, and opportunity." Reynolds filed a resistance. The court granted the motion, concluding "a logical connection between a defendant's intent at the time of a crime (assault) and his prior acts of violence existed and that evidence of prior bad acts was relevant and admissible." At trial, Kramer testified to eleven past incidents involving Reynolds.

> 1. February 2002: Reynolds pushed Kramer outside the Sportsman's and told Kramer that (i) the only thing keeping Reynolds from beating Kramer up is the fact that Reynolds is a lawyer and Kramer was not worth his license to practice law, and (ii) if Reynolds ever saw Kramer within five feet of his wife, he would beat Kramer senseless.

> 2. May 2002: At the country club golf course, Reynolds shook his fist at Kramer and said he would be waiting for him.

> 3. May 2002: Reynolds went into a Todd's Cafe and said that he should have thrown Kramer off the balcony the other day at the golf course.

> 4. Summer 2002: Kramer was walking his dog in front of the old high school, and Reynolds pushed Kramer down and said some obscene things to him.

> 5. September 2002: In front of the Sportsman's, Reynolds got in Kramer's face, pushed him down, and poked him in the eye.

> 6. June 15, 2003: Reynolds approached Kramer while he and his son were sitting in his car in front of the Dollar General. Reynolds threatened Kramer, punched him, and then asked Kramer's son whether he was "going to grow up

to be a pussy like his dad." In exchange for dropping the assault charge, Reynolds agreed to abide by a no-contact order for one year and to undergo an anger management evaluation.

       7.  February 2005: At a wrestling meet, Reynolds and Kramer were both in the concession lunch line, and Reynolds blew up at Kramer and cursed at him.

       8.  February 2005:  At another wrestling meet, Reynolds tried to start a fight with Kramer in the bathroom, but someone came in.

       9.  July 2005:  While Kramer and his son were riding their bikes, Reynolds drove by in his car, rolled down the window, and tried to spit at Kramer, but missed and hit his son's leg instead.

      10.  January 2006:  Reynolds spit at Kramer outside of the West Sioux High School and said to Kramer, "come on, let's do something."

      11.  March 2006:  Kramer and his son walked into the grocery store and Reynolds was there.  Reynolds cursed at them.

The first five incidents, which involved Reynolds pushing and threatening Kramer, occurred in 2002 after Reynolds discovered his wife Maggie was having an affair with Kramer.  The sixth incident occurred in 2003 while Reynolds and Maggie were in the midst of getting a divorce.  All six of these incidents occurred more than three years before the incident in question.  The incidents resumed over a year and a half later in 2005.  The remaining five incidents involved Reynolds spitting at Kramer and/or cursing at him.  The most recent incident occurred about six months before the incident in question.  Defense counsel objected on relevance and hearsay grounds.  A few witnesses testified to Reynolds' peaceful character.

Before submission of the case to the jury, Reynolds requested the court include Iowa Criminal Jury Instructions 200.34, concerning prior-bad-acts evidence, and 200.38, concerning character and reputation.

The court denied Reynolds' request for the instruction on character and reputation and gave a modified version of the prior-bad-acts instruction. The jury found Reynolds guilty of assault causing bodily injury. Reynolds appealed, asserting the court erred in admitting prior-bad-acts evidence, giving the modified prior-bad-acts instruction, and refusing to give the requested character instruction. The court of appeals reversed as to the prior-bad-acts instruction and, without determining whether any of the acts were admissible or not, concluded the district court abused its discretion in issuing a blanket ruling admitting all prior bad acts. The court of appeals did not address the character instruction. The State appealed.

## II. Scope of Review.

We review a district court's evidentiary rulings regarding the admission of prior bad acts for abuse of discretion. *State v. Parker*, 747 N.W.2d 196, 203 (Iowa 2008). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001) (quoting *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)). If an abuse of discretion occurred, reversal will not be warranted if error was harmless. *State v. Henderson*, 696 N.W.2d 5, 10 (Iowa 2005).

We review challenges to jury instructions for correction of errors at law. *State v. Heemstra*, 721 N.W.2d 549, 553 (Iowa 2006). We review a district court's failure to give a jury instruction for an abuse of discretion. *State v. Piper*, 663 N.W.2d 894, 914 (Iowa 2003). "Error in giving a jury instruction does not merit reversal unless it results in prejudice to the defendant." *State v. Fintel*, 689 N.W.2d 95, 99 (Iowa 2004).

### III. Merits.

**A. Admissibility of Prior Bad Acts.** Reynolds contends the district court erred when it permitted the State to introduce evidence that Reynolds had "harassed, threatened, assaulted, and intimidated" Kramer in the past. Under Iowa Rule of Evidence 5.404(*b*),

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, such evidence is not admissible to demonstrate the defendant has a criminal disposition and was thus more likely to have committed the crime in question. *State v. Castaneda*, 621 N.W.2d 435, 439–40 (Iowa 2001).

> [T]he public policy for excluding bad-acts evidence "is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds."

*State v. Sullivan*, 679 N.W.2d 19, 24 (Iowa 2004) (quoting *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985)).

This case concerns a wide variety of prior bad acts, ranging from an assault to cursing. We have yet to define what types of acts are excluded under rule 5.404(*b*). Although courts in other jurisdictions have been faced with the issue of whether a certain act should be considered a prior bad act, few have actually defined what a prior bad act is. *See, e.g., United States v. Robinson*, 978 F.2d 1554, 1562–64 (10th Cir. 1992) (membership in a gang admissible as prior bad act); *Gattis v. State*, 637 A.2d 808, 818–19 (Del. 1994) (the act of the defendant following the victim back to her apartment was not considered a prior

bad act). The Sixth Circuit has stated, "[c]onceivably within the broad language of the rule is any conduct of the defendant which may bear adversely on the jury's judgment of his character." *United States v. Cooper*, 577 F.2d 1079, 1087–88 (6th Cir. 1978). Maryland has defined a bad act as "an activity or conduct, not necessarily criminal, that tends to impugn or reflect adversely upon one's character, taking into consideration the facts of the underlying lawsuit." *Klauenberg v. State*, 735 A.2d 1061, 1072 (Md. 1999); *see also United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988) ("To fall within the scope of Rule 404(b), an act need not be criminal, so long as it tends to impugn a defendant's character."). We find these definitions to be instructive.

Even though several of the incidents between Reynolds and Kramer cannot be classified as a crime, such as Reynolds cursing at Kramer or trying to spit on him, all of the incidents do "reflect adversely upon [Reynolds'] character, taking into consideration the facts of [this case]." *Klauenberg*, 735 A.2d at 1072. All eleven incidents are thus potentially excluded as prior bad acts under rule 5.404(*b*).

However, prior bad acts are admissible if offered for the purpose of establishing motive or intent. Iowa R. Evid. 5.404(*b*). Before evidence of prior bad acts can be considered admissible, the court must (1) find the evidence is "relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts," *Sullivan*, 679 N.W.2d at 25, and (2) determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant, *Castaneda*, 621 N.W.2d at 440; Iowa R. Evid. 5.403. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa

R. Evid. 5.401. When evidence of prior bad acts is offered "to establish an ultimate inference of mens rea, the court should require the prosecutor to 'articulate a tenable noncharacter theory of logical relevance.'" *Sullivan,* 679 N.W.2d at 28 (quoting Edward J. Imwinkelried, *The Use of Evidence of an Accused's Uncharged Conduct to Prove Mens Rea: The Doctrine Which Threatens to Engulf the Character Evidence Prohibition,* 51 Ohio St. L.J. 575, 585 (1990)).

Once the court determines the evidence is relevant, then it must balance the evidence's probative value with the danger of unfair prejudice under Iowa Rule of Evidence 5.403. "Unfair prejudice arises when the evidence would cause the jury to base its decision on something other than the proven facts and applicable law, such as sympathy for one party or a desire to punish a party." *State v. Taylor,* 689 N.W.2d 116, 124 (Iowa 2004). In balancing the probative value against the danger of unfair prejudice, the court should consider the following factors:

> the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Id.*

Here, the district court granted the State's pretrial motion and issued a blanket ruling determining Reynolds' prior bad acts, as listed in the minutes of evidence, were admissible.[1] It is generally impossible to

---

[1]No one argues that error was not preserved or that the court's ruling was not a final ruling as to the admissibility of evidence. *See State v. Schaer,* 757 N.W.2d 630, 634 (Iowa 2008) (objection at trial not required to preserve error "where a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial") (quoting *State v. Daly,* 623 N.W.2d 799, 800 (Iowa 2001)).

rule on the admissibility of prior bad acts before trial because their admissibility is so contingent on what "*legitimate* issue[s] [are] in the case." *Sullivan*, 679 N.W.2d at 25. We do not think it is good practice to make a *final* ruling on admissibility of prior bad acts before evidence is received at trial. This is not to say a preliminary ruling, or a grant of a motion in limine, should not be used. We are merely cautioning the trial court not to give a final ruling on such extensive and varied evidence. Here, the court did not examine whether each incident would be admissible under Iowa Rules of Evidence 5.404(*b*) and 5.403. With so many different and varied types of evidence with different and varied levels of probative value and danger for unfair prejudice, the blanket ruling does not adequately address the admissibility of each incident. Although it is imperative that the parties preserve error as to any particular item of evidence, it is also important for the trial court to rule with some specificity. The court ventured on thin ice when it made such an all-inclusive ruling.

Reynolds' prior threats and assaults towards Kramer are relevant because they reveal his motive on the night in question. The evidence was offered to demonstrate Reynolds' personal animus toward Kramer. In sexual assault and domestic violence cases, we have recognized that the prior relationship between the defendant and the victim is relevant in establishing intent and/or motive. *See State v. Reyes*, 744 N.W.2d 95, 103 (Iowa 2008) (holding admission of prior sexual abuse involving the same victim was relevant "to demonstrate the nature of the defendant's relationship and feelings toward a *specific* individual"); *Taylor*, 689 N.W.2d at 128 n.6 (" '[E]vidence of prior bad acts is especially relevant and probative in domestic violence cases because of the cyclical nature of domestic violence.' The relationship between the defendant and the

victim, especially when marked by domestic violence, sets the stage for their later interaction." (quoting Jane H. Aiken & Jane C. Murphy, *Evidence Issues in Domestic Violence Civil Cases*, 34 Fam. L.Q. 43, 56 (2000))); *State v. Spaulding*, 313 N.W.2d 878, 880 (Iowa 1981) ("The prior acts with the victim were admissible under a generally recognized exception to the above 'exclusionary rule' in order 'to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial.' " (quoting *McCormick's Handbook on the Law of Evidence*, § 190, at 449 (2d ed. E. Cleary 1972))). Although this case is not an example of domestic violence or sexual assault, we find the prior relationship between Reynolds and Kramer relevant in establishing Reynolds' motive on the night in question. The evidence was not offered to show a *general propensity* towards violence but rather "to demonstrate the nature of [Reynolds'] relationship and feelings toward a *specific* individual." *Reyes*, 744 N.W.2d at 103. Although some of the incidents, such as the cursing, may not be relevant standing alone, a certain commonality of all incidents weaves them together and demonstrates Reynolds' motive—his hatred of Kramer.

Despite the fact that many of the prior bad acts were relevant, the danger of unfair prejudice in admitting all eleven incidents outweighs their probative value, and therefore, they should not have been admitted. Five of the incidents occurred in 2002, more than four years before the incident in question, and immediately after Reynolds discovered his wife Maggie was having an affair with Kramer. On five separate occasions, Reynolds pushed and threatened Kramer, twice telling him that if he ever saw Kramer near his wife again, he would beat him up. After applying the four factors set forth in *Taylor*, it becomes clear each of these early incidents does have some probative value, but admitted together, they

have a high danger unfair prejudice. *Taylor*, 689 N.W.2d at 124. First, there was little need for this evidence, as the fact that Kramer began having an affair with Maggie while she was still married to Reynolds had already been disclosed. Second, although Reynolds admitted to threatening Kramer on several occasions, the parties did not agree on exactly what transpired on each occasion. Third, the incidents do demonstrate Reynolds' motive on the night in question—his hatred of Kramer. However, because they occurred at different times and under different circumstances, (after Reynolds had learned Kramer was having an affair with his wife, Maggie), they are not necessarily probative of Reynolds' intent or motive four years later. Lastly, it is unclear "the degree to which the fact finder will be prompted to decide the case on an improper basis." *Id.* Most people would not consider threatening the man who cuckolded him to be indicative of aggressive behavior on the night in question. However, considering all five incidents together, a jury may conclude Reynolds was the aggressor at the pool hall because he had threatened and pushed Kramer several times in the past.

The assault in the Dollar General parking lot is also not admissible. Under the factors listed in *Taylor*, the danger of unfair prejudice substantially outweighs the probative value. *Id.* First, there was little need for this evidence. The fact that Kramer began having an affair with Maggie while she was still married to Reynolds establishes Reynolds' personal animus toward Kramer. Although there is clear proof Reynolds committed the assault, and this assault is relevant to Reynolds' intent or motive on the night in question, admitting the assault would be highly prejudicial. As the Dollar General assault is similar to the incident in question, "[i]t would be extremely difficult for jurors to put out of their minds knowledge that the defendant had [assaulted the victim] in

the past and not allow this information to consciously or subconsciously influence their decision." *Henderson*, 696 N.W.2d at 13. Anyone hearing of the Dollar General incident could easily conclude Reynolds probably started this fight too, because of his propensity. Thus the probative value of the Dollar General assault is substantially outweighed by the danger of unfair prejudice.

Lastly, the more recent incidents occurring in 2005 and early 2006, where Reynolds either spit at Kramer or cursed at him, are neither highly probative of Reynolds' motive on the night in question nor unfairly prejudicial on an individual basis. Although individually, some of the incidents may be admissible, admitting all five tips the scale toward unfair prejudice outweighing their probative value. First, even though there is little need for this evidence since the personal animus has already been established, these incidents do demonstrate that Reynolds still harbors hatred for Kramer five years later. Second, although Reynolds admits cursing at Kramer and being generally hostile towards him whenever they encountered each other, the parties do not agree on the details. Third, while cursing at someone reveals a personal animus, it not highly probative of the motive or intent to assault that same person. Although it is unlikely that the fact finder would determine Reynolds assaulted Kramer because he had cursed at him a single time in the past, five incidents of cursing (and spitting) in the year preceding the incident in question may convince a jury otherwise. The danger of the jury concluding he had a propensity for assault, and therefore he committed this crime, is high.

The admission of the eleven prior bad acts was not harmless. "Reversal is required in cases of nonconstitutional error when it appears 'that the rights of the complaining party have been injuriously affected by

the error or that he has suffered a miscarriage of justice.' " *Id.* at 12 (quoting *Sullivan*, 676 N.W.2d at 29). We presume prejudice and "reverse unless the record affirmatively establishes otherwise." *Sullivan*, 676 N.W.2d at 30. Although it could be easily argued that admitting each individual incident would have been harmless error, all eleven incidents stacked together would likely lead a jury to conclude Reynolds had a propensity for initiating fights with Kramer.

It was an abuse of discretion to admit evidence of the prior bad acts. Here the court improperly admitted eleven incidents where Reynolds pushed, threatened, or cursed at Kramer. As we have stated,

> "When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered[:] to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.' "

*Castaneda*, 621 N.W.2d at 441–42 (quoting *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994)). When the prior bad act is the same type of crime as the one at issue, "[i]t would be extremely difficult for jurors to put out of their minds knowledge that the defendant had [assaulted the victim] in the past and not allow this information to consciously or subconsciously influence their decision." *Henderson*, 696 N.W.2d at 13.

In its closing argument, the State encouraged the jury to conclude Reynolds had assaulted Kramer because he had done so in the past.

> Again, you need to look at the history. The history is Mr. Reynolds has always been the aggressor. Dan Kramer has always been the person trying to get behind this and not live in fear.
>
> . . . .
>
> So, again, history foretells the future. And the last five years of history foretold what was going to happen September 27, 2006.

Even though we have determined the prior bad acts to be "relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts," the State nevertheless used them as propensity evidence, which could very well influence a jury's decision to find Reynolds guilty of assault. *Sullivan,* 679 N.W.2d at 25. At best, this case demonstrates the dangers of allowing this type of evidence for the very limited purpose for which it is admissible. If prior-bad-acts evidence is admitted for a permissible purpose, such as motive or intent, it cannot be used by the State for impermissible purposes, such as propensity. The State should not have offered the evidence to demonstrate Reynolds' intent or motive and then use it to show his propensity towards starting fights with Kramer. The record does not affirmatively establish a lack of prejudice. *Id.* at 30. Therefore, we reverse and remand.

**B. Jury Instructions.**

Although we have reversed and remanded based on prejudicial error in admitting the prior bad acts, we address the jury instruction claims to provide guidance in a new trial, should any evidence of prior bad acts be deemed admissible.

1. *Prior bad acts.* Reynolds contends the district court erred in refusing to give Iowa Criminal Jury Instruction 200.34, concerning prior-bad-acts evidence. Reynolds requested the court use Iowa Criminal Jury Instruction 200.34, which provides:

> Evidence has been received concerning other wrongful acts alleged to have been committed by the defendant. The defendant is not on trial for those acts.
>
> This evidence must be shown by clear proof, and can only be used to show [motive] [intent] [absence of mistake] [common scheme] [identity of person charged].
>
> If you find other wrongful acts (1) occurred; *(2) were so closely connected in time; and (3) were committed in the same*

*or similar manner as the crime charged,* so as to form a reasonable connection between them, then and only then may such other wrongful acts be considered for the purpose of establishing [motive] [intent] [absence of mistake] [common scheme] [identity of person charged].

Iowa Criminal Jury Instruction 200.34 (2006) (emphasis added). Instead, the court gave the following modified instruction:

Evidence has been received concerning other wrongful acts alleged to have been committed by the defendant. The defendant is not on trial for those acts.

This evidence must be shown by clear proof, and can only be used to show intent.

If you find other wrongful acts occurred, then and only then may such other wrongful acts be considered for the purpose of establishing intent.

Reynolds challenges the omission of the phrase "were so closely connected in time" in light of the fact over half of the incidents occurred at least three years prior to the fight at issue. The length of time between a prior bad act and the crime charged is a factor that speaks to the weight of the evidence. *See State v. Casady*, 491 N.W.2d 782, 785 (Iowa 1992) ("The remoteness of evidence generally affects the weight rather than admissibility of the remote evidence."). However, a prior act may be so remote that it is irrelevant, and therefore, inadmissible, and that determination is made by a court, not a jury. *State v. Maestas*, 224 N.W.2d 248, 251 (Iowa 1974). Although courts use temporal proximity as a factor in determining whether to admit prior bad acts, the jury should use remoteness only to determine how much weight to afford the evidence.

The proposed instruction directs the jury to evaluate whether to *use* the prior-bad-acts evidence, not how to *weigh* the evidence. As the proposed instruction states, "if you find other wrongful acts . . . were so closely connected in time . . . *then and only then* may such other

wrongful acts be considered. . . ." (Emphasis added.) Under Iowa Rule of Evidence 5.104(a), the court determines issues of admissibility and the jury determines the weight to give the evidence. There is a difference between admissibility and instructing the jury on how to use the evidence once it is admitted. The instruction should not have directed the jury to determine whether to *use* the evidence but how to *weigh* the evidence. The given instruction was a correct statement of the law, and the court did not err in refusing to give Reynolds' proffered instruction. *See Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000) ("Under Iowa law, a court is required to give a requested instruction when it states a correct rule of law having application to the facts of the case and when the concept is not otherwise embodied in other instructions."); David P. Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events* § 4.5.1(4) (2009).

2. *Character*. Reynolds also contends the court erred in refusing to give Iowa Criminal Jury Instruction 200.38, which, if edited for this case, reads:

> Evidence has been received concerning the defendant's character for peacefulness. This evidence should be considered with all other evidence in determining whether the defendant is guilty or not.
>
> If you find the defendant's character as to peacefulness is good, you may consider this evidence in determining whether a person of such character for peacefulness would likely to commit the crime charged.
>
> If the evidence of such good character as to peacefulness is good enough, together with all of the other evidence, to raise a reasonable doubt as to the defendant's guilt, he must be acquitted, even though without such proof of good character the jury would convict.
>
> However, the defendant's previous good character as to peacefulness is not a defense if you find by evidence beyond a reasonable doubt that the defendant committed the crime.

As Reynolds asserted he hit Kramer in self-defense and evidence was offered as to Reynolds' peaceful character, Reynolds' character for peacefulness was an issue. *See State v. Martinez*, 679 N.W.2d 620, 624–25 (Iowa 2004) (determining the trait of peacefulness is pertinent to the crime of assault and it was not error to refuse character instruction where character trait was not pertinent to the crime charged). The requested instruction on Reynolds' character for peacefulness should have been given.

## IV. Conclusion.

It was prejudicial error to admit the prior bad acts, even though the evidence was relevant to Reynolds' motive. We therefore vacate the court of appeals' decision, reverse the judgment of the district court, and remand the case for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Wiggins and Baker, JJ., who concur specially.

**WIGGINS, Justice (specially concurring).**

I write to concur in the result reached by the majority in this case. We apply a two-part test to determine if other acts are admissible under Iowa Rule of Evidence 5.404(*b*). The court must first decide whether the other-acts evidence is relevant to a legitimate factual issue in dispute other than a general propensity to commit wrongful acts. *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). Next, the court must determine if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.* The majority concludes the other-acts evidence is relevant to a legitimate factual issue in this case, motive, but its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Therefore, the majority precluded its admissibility.

I would find the evidence inadmissible because it is not relevant to a legitimate factual issue in this case. Reynolds admits he assaulted the victim, but raises the defense of self-defense. When the defendant raises the issue of self-defense, the State must prove beyond a reasonable doubt any of the following to defeat the claim of self-defense: (1) the defendant initiated or continued the incident resulting in injury; (2) the defendant did not believe he was in imminent danger of death or injury and that the use of force was not necessary to save him; (3) the defendant did not have reasonable grounds for the belief he was in imminent danger of injury or death and that the use of force was not necessary to save him; or (4) the defendant used unreasonable force. *State v. Rubino*, 602 N.W.2d 558, 565 (Iowa 1999).

In this case, the only legitimate factual issue in dispute was who initiated the incident that resulted in injury to the victim. None of the

other-acts evidence the State attempted to introduce into evidence is relevant to who initiated the incident. Neither Reynolds nor the victim liked each other. It is just as logical the victim had enough of Reynolds' antics that the victim initiated the incident. The fact a person does not like another person is not relevant evidence as to who initiated the fight. Consequently, the only purpose of the other-acts evidence was to show propensity. *Sullivan,* 679 N.W.2d at 25. The State cannot use this other-acts evidence for that purpose. Accordingly, I would find the other-acts evidence inadmissible because they are not relevant to a legitimate factual issue in dispute. I, therefore, concur in the opinion of the court.

Baker, J., joins this special concurrence.