# IN THE COURT OF APPEALS OF IOWA

No. 14-1964
Filed November 12, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RYAN NICHOLAS HAYNES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Douglas F. Staskal,

Judge.


        Ryan Haynes appeals following conviction for second-degree robbery.

**REVERSED AND REMANDED.**



        Jamie Hunter of Dickey & Campbell Law Firm, P.L.C., Des Moines, for

appellant.

        Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee.



        Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

Ryan Haynes appeals following judgment and sentence entered on a robbery conviction, contending the trial court erred in denying his motion for new trial based on the jury's inconsistent verdicts. He also contends the district court erred in evidentiary rulings and he was denied effective assistance of trial counsel. We reverse and remand for a new trial due to evidentiary rulings that prejudiced the defendant, as well as inaccurate jury instructions.

## I. Background Facts and Proceedings.

On the afternoon of June 30, 2013, Ryan Haynes received a phone call from an acquaintance, Alec Steffes, who was looking for ecstasy pills. Haynes had acted as a middleman in Steffes's prior marijuana purchases. Arrangements were then made through text messages for Steffes to meet Haynes and another individual, "Pill Man,"[1] at the Metro Lofts to purchase four ecstasy pills for $80. Steffes was with his friends, Emily and Clay; Haynes knew Emily but not Clay. Once the four met at Metro Lofts, Emily and Clay waited outside while Pill Man let Steffes and Haynes inside the secure building.

According to Steffes, he, Haynes, and Pill Man walked up the stairs to the second floor of the Metro Lofts, where Pill Man opened the door to the stairwell for Steffes. As Steffes walked through the door, he was hit from behind breaking his jaw. Steffes turned around and saw Haynes near him in an "aggressive stance" and Pill Man four or five feet away.

---

[1] This is the only name Haynes knew for this individual. Steffes did not know him and had not seen him before.

After being hit, Steffes found Emily and Clay outside, and they drove to the hospital. Steffes received a text from Haynes' number: "Aye, my dud e jus robbed him." Steffes had to have surgery to repair his jaw, and his mouth was wired shut for six weeks. He then left to travel to Colorado and did not return to Iowa for several days. He reported the incident to police on July 8.

On January 22, 2014, after Des Moines Police Officer Ryan Neumann was called to Stephanie Smith's apartment on an unrelated matter and found Haynes in Smith's closet. Haynes gave the officer a different name. When Haynes' identity was determined, he was arrested.

Haynes was charged with robbery in the first degree and willful injury causing serious injury in relation to Steffes' complaint. Assistant Public Defender Heather Lauber was appointed to represent Haynes. She conducted depositions and filed a motion in limine requesting the court exclude evidence about the circumstances surrounding Haynes' arrest as irrelevant and unduly prejudicial.

Trial began on Monday, June 2, 2014. Assistant Public Defender Jennifer Russell appeared for Haynes and informed the court that attorney Lauber had other duties arise. Attorney Russell continued:

> We spoke with Mr. Haynes, both of us present, on Friday. We had him in the office. I went through his entire file this weekend sufficiently. I feel that I'm very well-versed in his case and feel prepared to continue with trial as he has not waived speedy trial. I had a chance to speak with him with Heather [Lauber] on Friday about his case in its entirety. So I just want to make sure and make a record that Mr. Haynes is okay with me continuing as his trial counsel.
> THE DEFENDANT: Yes, sir.
> THE COURT: Are you?
> THE DEFENDANT: Yes, sir.

After jury selection, attorney Russell addressed the court and indicated a plea had been offered to Haynes. Haynes acknowledged on the record that he wished to proceed to trial and not take the plea.

Attorney Russell renewed the written motion in limine, arguing the circumstances of Haynes' arrest were not relevant to the robbery charge and highly prejudicial. The court rejected the motion.

During opening arguments, defense counsel stated "this is going to be a fairly simple, straightforward case of a he said-he said type story." She told the jury, in part,

> You'll hear from Ryan. I know we spent a lot of time in jury selection talking about—and everybody agreed that, you know, Mr. Haynes is not required to testify. But I can tell you he is. He's going to tell you his side of the story, what happened at the Metro Lofts apartments on June 30th of last year.

Steffes and Emily testified about meeting Haynes on June 30 to purchase four ecstasy pills for $80 and encountering an unidentified third person. Emily remained outside the apartment building. She testified Steffes came out a different door than he and Haynes had entered. Both Steffes and Emily stated they did not call the police that day because the assault occurred during a drug purchase. Steffes testified he decided to call the police at the urging of family when he returned from his vacation. Emily testified Steffes had lent her his cell phone at some point after the incident and she did not delete any texts from Steffes's cell phone while it was in her possession.

Officer Dusty Rains testified he took Steffes's complaint on July 8, 2013. Steffes had his jaw wired shut at the time; Emily was there with Steffes and assisted in the report. Officer Rains testified Steffes stated Haynes hit him and

demanded Steffes give him all his money. Steffes and Emily did not tell Officer Rains they were at the Metro Lofts to purchase ecstasy or that they knew Haynes from prior marijuana purchases. The officer was shown a text received on Steffes's phone, "Aye dud e jus robbed him"—a screen shot indicates the message was from "Ryan" on June 30 at 4:47 p.m.

Officer Neumann testified he arrested Haynes at the Metro Lofts in January 2014 after being called there on another matter. Officer Neumann made the statement on three occasions during his testimony that he found Haynes hiding in the closet. He also testified Haynes gave a different name when he was found. The officer was asked, "How long did it take you to figure out that he was Ryan Haynes and wanted on a robbery warrant?" He responded, "Approximately a half-hour, 45 minutes." On cross-examination, Officer Neumann acknowledged the address at which Haynes was located, at Stephanie Smith's apartment, was not in the Metro Lofts, but in a complex near there. Officer Neumann also testified he did not ask Haynes questions about the June 30 incident because he was not aware of it.

Officer Brad Youngblut was the officer who followed up on Steffes' complaint. He testified he was unable to reach Steffes, but did contact Emily in February 2014 after Haynes's arrest.

Haynes testified that on June 30, 2013, he was at the Des Moines Art Festival with his girlfriend, Stephanie Smith. He stated he had been the middle man for purchases of marijuana by Steffes and Emily on two or three previous occasions, and he acknowledged he had benefited by sharing in the marijuana purchased. He testified he had met Pill Man the week before in a bar when he

"just kept telling people, Oh, I got pills on deck. . . . So I took his number down, and I asked him his name, and he said his name was Pill Man." According to Haynes, he met Steffes, Emily, and Clay at the Metro Lofts, introduced Steffes to Pill Man and then left to get back to his family. Haynes testified the text to Steffes was made out of concern after receiving a call from the Pill Man that Pill Man had robbed Steffes: "It was kind of slang, like Hey my dude just robbed you?" Haynes acknowledged he suffered an injury to his right thumb and wrist on June 30. He testified he was playing basketball about 7:00 p.m. when the injury occurred and he went to the hospital at 10:30 p.m. for x-rays, which indicated no broken bones.

Without objection, the jury was instructed:

Instruction No. 17
The State must prove all of the following elements of Robbery in the First Degree:
1. On or about June 30, 2013, the defendant, or someone he aided and abetted, had the specific intent to commit a theft; and
2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant, or someone he aided and abetted, committed an assault on Alec Steffes; and
3. The defendant, or someone he aided and abetted, inflicted a serious injury on Alec Steffes.
If the State has proved all of these elements, the defendant is guilty of Robbery in the First Degree. If the State has failed to prove any of the elements, the defendant is not guilty of Robbery in the First Degree and you will then consider the lesser included offense of Robbery in the Second Degree as explained In Instruction No. 22.
. . . .
Instruction No. 22
The State must prove all of the following elements of the lesser included offense of Robbery in the Second Degree:
1. On or about June 30, 2013, the defendant, or someone he aided and abetted, had the specific intent to commit a theft; and
2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant, or

someone he aided and abetted, committed an assault on Alec Steffes.

If the State has proved both of these elements, the defendant is guilty of Robbery in the Second Degree. If the State has failed to prove any of these elements, the defendant is not guilty of Robbery in the Second Degree and you will then consider the lesser included offense of Assault as explained in Instruction No. 23.

. . . .

Instruction No. 24

The State must prove all of the following elements of Willful Injury Causing Serious Injury, as charged in Count II:

1. On or about the 30th day of June, 2013, the defendant, or someone he aided and abetted, assaulted Alec Steffes.

2. The defendant, or someone he aided and abetted, specifically intended to cause a serious injury to Alec Steffes.

3. Alec Steffes sustained a serious injury as a result of the assault.

If you find the State has proved all of these elements, the defendant is guilty of Willful Injury Causing Serious Injury, as charged in Count II. If the State has failed to prove any of the elements, the defendant is not guilty of Willful Injury Causing Serious Injury and you will then consider the lesser included offense of Willful Injury Causing Bodily Injury as explained instruction No. 25

Instruction No. 25

The State must prove all of the following elements of Willful Injury Causing Bodily Injury:

1. On or about the 30th day of June, 2013, the defendant, or someone he aided and abetted, assaulted Alec Steffes.

2. The defendant, or someone he aided and abetted, specifically intended to cause a serious injury to Alec Steffes.

3. Alec Steffes sustained a bodily injury as a result of the assault.

If you find the State has proved all of these elements, the defendant is guilty of the lesser included offense of Willful Injury Causing Bodily Injury.

If the State has proved only elements 1 and 2, the defendant is guilty of the lesser included offense of Assault with Intent to Inflict Serious Injury.

If the State has proved only elements 1 and 3, the defendant is guilty of the lesser included offense of Assault Causing Bodily Injury.

If the State has proved only element 1, the defendant is guilty of the lesser included offense of Assault.

If the State has failed to prove element 1, the defendant is not guilty in Count II.

The jury found Haynes guilty of first-degree robbery on count I and assault causing bodily injury as a lesser-included offense on count II. Haynes filed posttrial motions, asserting the jury's verdicts were inconsistent. In its ruling on the posttrial motions, the court observed it had erred in instructing the jury as to first-degree robbery by failing to require proof of specific intent to cause serious injury. The court concluded the jury had found the elements of second-degree robbery, entered judgment on that offense, and merged the assault conviction with the robbery conviction.

On appeal, Haynes contends the court erred in denying his motion for new trial because the verdicts are inconsistent and not sustained by the evidence. Haynes also contends the court abused its discretion in admitting evidence of his conduct surrounding his arrest and in not allowing additional text messages to be admitted. Finally, Haynes argues he was denied the effective assistance of trial counsel because counsel's opening argument required that he testify and because counsel did not timely introduce evidence of Steffes' impeachable offenses.

**II. Scope and Standard of Review.**

"The consequence of a potentially inconsistent jury verdict is a question of law, and accordingly, our review is de novo." *State v. Merrett*, 842 N.W.2d 266, 272-73 (Iowa 2014); *see also State v. Halstead*, 791 N.W.2d 805, 807 (Iowa 2010).

We review evidentiary rulings made by the district court for an abuse of discretion. *State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013).

**III. Discussion.**

*A. Inconsistent-verdicts claim.* Haynes argues that because it is impossible for the jury to find him guilty of first-degree robbery but not guilty of willful injury, the verdicts are inconsistent and must be set aside and a new trial ordered. *See State v. Hickman*, 623 N.W.2d 847, 852 (Iowa 2001) ("[W]e conclude the words "purposely inflicts . . . a serious injury" under the first-degree robbery statute and "intended to cause . . . serious injury" under the willful-injury statute, convey the same thought: the defendant intended to cause serious injury to the victim (specific intent), not just to do the act that resulted in serious injury (general intent). Under this analysis, it is impossible to commit first-degree robbery under the purposely-inflicts-serious-injury alternative without also committing willful injury."). Had the jury been instructed that the third element of first-degree robbery was that the defendant "purposely caused a serious injury," we would have to agree that the jury's decision to acquit on willful injury was inconsistent with a finding of guilt on first-degree robbery. *See Halstead*, 791 N.W.2d at 816 ("A jury simply could not convict Halstead of the compound crime of assault while participating in a felony without finding him also guilty of the predicate felony offense of theft in the first degree."). But the trial court concluded the jury was not properly instructed and the jury was able to find the defendant guilty of first-degree robbery without the purpose or specific intent to cause serious injury. There is no inconsistency in the jury's findings of assault as a lesser-included offense of willful injury (where the jury rejected any finding of specific intent to injure) and first-degree robbery *as instructed*. *See also Merrett*, 842 N.W.2d at 275 ("We focus on how this case was charged.").

Nonetheless, we must consider the admittedly erroneous instructions[2] in light of Haynes' complaints that the trial court abused its discretion in allowing the testimony of Officer Neumann about the circumstances of his arrest, and in disallowing the admission of Steffes' prior conviction for an impeachable offense.

*B. Evidentiary rulings.* Prior to trial, the district court ruled on pretrial motions:

> First of all, as to impeachable prior criminal history, I don't believe either the defendant or the alleged victim in this case have prior convictions that would be admissible for the purpose of impeaching their credibility. And so that's my ruling on that.
> The other issue was evidence regarding when the defendant was arrested, that he was hiding in a closet and gave a false name. I am going to allow that. The State has asserted a couple reasons why it would be relevant in this case connecting the defendant, first of all, with the place where the alleged offense occurred and the argument that the defendant was aware of the potential at least for a charge in this case and would have been a reason for him to hide his identity. I will not allow nor does the State intend to put on evidence that the defendant had an outstanding warrant from another county for another matter or that the police were responding to some incident that involved the defendant allegedly committing some crime or other bad behavior. So that's the court's ruling.

Haynes contends the district court abused its discretion in allowing the testimony that Haynes was hiding in the closet and gave false information at the time of his arrest.

"An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001) (citation omitted). An untenable reason includes an erroneous application of the law. *Id.*

---

[2] In addition to the faulty first-degree robbery charge, the State's brief asserts the instructions on willful injury were flawed because they omitted a lesser-included offense of assault causing serious injury.

"Evidence which is not relevant is not admissible." Iowa R. Evid. 5.402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. Haynes argues the evidence surrounding his arrest several months after the alleged assault is irrelevant. Here, the trial court was swayed by the State's claim that the evidence was relevant because it occurred near the place where the alleged offense occurred and showed the defendant was aware of the potential at least for a charge in this case. We are not similarly convinced.

The place of Haynes' arrest was not at the scene of the alleged robbery (Metro Lofts) but at his girlfriend's apartment in another complex. His presence at that apartment complex has no tendency to prove his involvement in an alleged robbery at a different location months earlier. And while evidence of flight or concealment may be probative of consciousness of guilt, *see State v. Ash*, 244 N.W.2d 812, 816 (Iowa 1976), we are not persuaded Haynes' "hiding" in January when an officer came to investigate a domestic situation "showed the defendant was aware of at least the potential of a charge" arising from an alleged assault several months prior. In fact, because there was another outstanding warrant from another county, Haynes may have been trying to avoid being arrested pursuant to the other county's warrant.

Even if the evidence was minimally relevant, we agree with Haynes that any probative value was substantially outweighed by the danger of unfair prejudice. *See State v. Reynolds*, 765 N.W.2d 283, 290 (Iowa 2009) ("Once the court determines the evidence is relevant, then it must balance the evidence's

probative value with the danger of unfair prejudice under Iowa Rule of Evidence 5.403. 'Unfair prejudice arises when the evidence would cause the jury to base its decision on something other than the proven facts and applicable law, such as sympathy for one party or a desire to punish a party.'" (citation omitted)).[3] Officer Neumann's testimony offered little, if anything, in connection with the June 30 incident and presented a great risk that the jury would use that testimony to decide the case on an improper basis. *See id.* at 292 ("When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered[:] to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.'" (citation and internal quotation marks omitted)).

As noted by defense counsel in opening argument at trial, the case was a "he said-he said" case. The admission of evidence that proved nothing more than Haynes was a "bad person" prejudiced him. And that prejudice was enhanced by the district court's ruling denying new defense counsel's request to use an impeachable offense to challenge the credibility of the complaining witness.[4]

---

[3] Iowa Rule of Evidence 5.404(b) prohibits evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that the person acted in conformity therewith. Prior bad acts are admissible if offered for other purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Iowa R. Evid. 5.404(b). However, before evidence of prior bad acts can be considered admissible, the court must (1) find the evidence is relevant and material to a legitimate issue in the case other than a general propensity to commit wrongful acts and (2) determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Reynolds*, 765 N.W.2d at 285.

[4] After the State rested, defense counsel informed the court Steffes had an aggravated misdemeanor conviction punishable by a term up to two years, which should have been

In combination, we conclude Haynes was deprived of a fair trial. We reverse and remand for a new trial.[5]

**REVERSED AND REMANDED.**

Tabor, J., concurs; Vogel, J., dissents.

---

admissible under Iowa Rule of Evidence 5.609(a) ("For the purpose of attacking the credibility of a witness: (1) Evidence that a witness other than the accused has been convicted of a crime shall be admitted, subject to rule 5.403, if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted . . . ."). *State v. Harrington*, 800 N.W.2d 46, 50 (Iowa 2011) ("The plain language of rule 5.609(a)(2), however, leaves the district court no similar discretion. Rule 5.609(a)(2) reflects the judgment that prior convictions involving dishonesty or false statement are always sufficiently relevant to the truthfulness of the witness's testimony that protections against jury misuse of the prior-conviction evidence is not necessary."). Here, even though the State had rested, Haynes' attorney could have asked to reopen the cross-examination or recall Steffes to the stand as a defense witness to address this impeachable conviction, but upon bringing the witness's conviction to the court's attention, the court reaffirmed its ruling.

[5] In light of our ruling, we need not address the remainder of Haynes' claims of error.

**VOGEL, Judge.** (dissenting)

Because I conclude that the error in admitting the evidence of the circumstances surrounding Haynes's arrest was harmless, I would affirm his conviction. "Reversal is not required for the erroneous admission of evidence unless prejudice results." *State v. Rodriquez*, 636 N.W.2d 234, 244 (Iowa 2001).

> "To establish prejudice, [the defendant] must show a reasonable probability that but for the error the outcome of the trial would have been different." Although it is difficult for a reviewing court "to surmise what answer to what question by what witness tipped the burden of proof and thus precipitated the verdict," where the other evidence overwhelmingly establishes the defendant's guilt, we have applied the harmless error doctrine.

*Id.* (alternation in original) (citations omitted).

While defense counsel attempted to describe this case as a "he said, he said"[6] situation, I disagree. Steffes testified Pill Man led him and Haynes up the stairs in the Metro Lofts. Pill Man held open the door as Steffes and Haynes walked through. Steffes was then struck in the jaw from behind. He turned to see Haynes standing in an "aggressive stance" with his "fists balled up." Haynes told Steffes to give them the rest of his money. Pill Man was four to five feet away. Steffes grabbed his pocket knife to defend himself, and Haynes and Pill Man ran away. Emily corroborated Steffes's testimony that Haynes entered the Metro Lofts with Steffes and Pill Man, contradicting Haynes's testimony that he introduced Pill Man and Steffes and then left. Haynes also admitted to seeking medical treatment for an injury to his hand and wrist the day of the robbery.

The evidence overwhelmingly established it was Haynes who struck Steffes in the jaw from behind and demanded Steffes's money. I conclude the

---

[6] The phrase "he said, she said" is most often used in sexual assault cases.

admission of the evidence surrounding Haynes's arrest months later did not affect the outcome of the trial.

As to Haynes's other claims on appeal, I conclude his ineffective-assistance-of-counsel claims should be preserved for possible postconviction-relief proceedings in light of the fact the claims implicate defense strategy and the record on appeal is inadequate. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("If . . . the court determines the [ineffective-assistance] claim cannot be addressed on appeal, the court must preserve it for a postconviction-relief proceeding, regardless of the court's view of the potential viability of the claim.").

Haynes also claimed the court abused its discretion in refusing to permit him to admit photographs of additional text messages between himself and Steffes, showing Steffes was the one that requested the meeting to obtain ecstasy. I conclude Haynes suffered no prejudice even assuming the court should have admitted the evidence. Steffes testified he asked Haynes to obtain ecstasy on the day of the assault. While the photographs of the text messages were not admitted, defense counsel was permitted to question Steffes about the text messages, and Steffes read the messages into the record. Introducing photographs of the text messages would not have affected the outcome of the trial. *State v. Hicks*, 245 N.W.2d 319, 321 (Iowa 1976) ("We have repeatedly held that the exclusion of evidence tending to show a certain fact is not reversible error where the claimed fact in question is fully established by other admitted evidence.").

I therefore would affirm Haynes's conviction on all claims made on appeal.