# IN THE COURT OF APPEALS OF IOWA

No. 13-1274
Filed August 27, 2014

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**DAVID SHANE ANDERSON,**
     Defendant-Appellant.

_____

     Appeal from the Iowa District Court for Ringgold County, Gregory A. Hulse (suppression) and Sherman W. Phipps (judgment and sentence), Judges.

     A defendant appeals from a ruling on his motion to suppress and his subsequent conviction. **AFFIRMED.**

     Kevin E. Hobbs, West Des Moines, for appellant.

     Thomas J. Miller, Attorney General, Heather Ann Mapes, Assistant Attorney General, and Clinton S. Spurrier, County Attorney, for appellee.

     Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

David Shane Anderson appeals from the district court judgment finding him guilty of conspiracy to deliver a controlled substance, in violation of Iowa Code sections 124.401(1)(c)(6) and 706.1 (2011). He contends the district court erred in (1) denying his motion to suppress based on an unreasonable search, (2) admitting certain hearsay statements, and (3) finding him guilty based on insufficient evidence. We affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS.

On June 3, 2012, at about 3:00 a.m., Ringgold County Sheriff's Deputy Shannon Arends was on patrol duty and driving with his canine partner, Murphy, a drug-detecting dog, secured in a cage behind the passenger seat. At about 3:15 a.m., Arends met a vehicle in the road without a front license plate. He turned around to follow the vehicle and watched it cross the center traffic line. He initiated a stop. The vehicle pulled into the parking lot of a gas station, and Arends pulled his vehicle in behind. Another officer, Deputy Mark Davison, arrived nearly at the same time to assist with the stop.

Arends approached the vehicle and observed a man later identified as the defendant, Anderson, behind the wheel. Anderson's wife, Trena, was seated in the passenger seat. Also in the vehicle were another man—later identified as Michael McKibbin—and the Andersons' three children. Arends determined Anderson's Indiana driver's license was suspended. The vehicle was registered to Trena. She stated she did not have a driver's license. Arends had Trena exit the vehicle and sit in the passenger seat of his patrol vehicle while he asked her

whether she knew Anderson's license was suspended when she allowed him to drive her vehicle. Arends observed that Trena was "very, very nervous" and "very jittery and jumpy." Her hands trembled and she was tense or stressed. Arends gave the following testimony of what happened next:

> [A]s I was talking to her, I started asking her if there was anything illegal in the vehicle. She did have some nervous responses when questioning her about that. Ultimately, I ended up asking her consent to search the vehicle, and she said that she would give me consent to search the vehicle. She had mentioned that there was some of her children's medications that were in the vehicle. That's one of the things she mentioned when we were talking. She gave me consent to search the vehicle. I told her—I said, "You do realize you have the right to refuse that?" and she said, "Yes." I think she said something along the lines of, "Why would I do that?" or something to that effect.

Trena indicated there was a locked safe in the trunk of the vehicle containing numerous prescription medications for herself and the children. Trena also indicated that Anderson had possibly used marijuana in the past. She then stepped out of the patrol vehicle, and Arends asked Anderson to come back to the patrol vehicle. When Trena stepped out of the vehicle, Murphy, who had been secured in his kennel in the back seat of the patrol vehicle, began to bark. Trena then began to cry.

Arends spoke to Anderson, informing him of the suspension of his license. Anderson indicated McKibben had a valid license and had been driving them back to Iowa from Indiana but grew tired, at which point Anderson took over driving. Arends asked Anderson if there were illegal substances in the vehicle.[1]

---

[1] Arends testified he asks vehicle owners and occupants if there are drugs in the vehicle before allowing Murphy to sniff so that Murphy does not accidentally ingest dangerous substances.

Arends indicated to Anderson that he intended to run the drug dog around the car. At that point, Anderson informed Arends there was marijuana in the vehicle under the seat cover of the driver's seat. He stated the marijuana belonged to McKibben but admitted he had smoked some of it himself.

In the meantime, Deputy Davison was talking with Trena, who volunteered to show the officers the prescription medications she stated were in a lockbox in the trunk. She opened the trunk and the lockbox and showed the officers the contents. The officers observed numerous prescription and non-prescription drugs which they found to be in order. They also observed a rolled-up stack of cash, bound with a rubber band. The cash was separated into individual one-hundred-dollar increments comprised of larger bills (mostly fifty- and one-hundred-dollar bills), a configuration the officer noted was consistent with the sale and distribution of illegal drugs. The cash totaled $1800.

Arends instructed Trena to remove the children from the car so he could conduct the canine sniff. Trena and the children stood by the ice machine outside the gas station. Murphy alerted on the driver's seat, where Arends discovered a small plastic bag containing a green leafy substance he identified as marijuana. Murphy also alerted to the trunk of the vehicle. Anderson stated to the deputies, "The dog must have alerted to the money." He then added that all money has the odor of drugs. The search of the vehicle turned up no other narcotics.

Arends determined he would not charge Trena with anything at the time. He arrested Anderson for driving under suspension and both Anderson and

McKibben for possession of marijuana. Noting that Trena did not have a valid driver's license, he arranged for the vehicle to be impounded. Trena requested she be able to access the trunk and remove some of the children's medications, which the officers permitted.

After being read her *Miranda* rights, Trena stated Anderson and McKibben had been given a large amount of methamphetamine and had gone to Indiana to sell it, but she had not been aware of this purpose for trip. Anderson and McKibben sold the methamphetamine, three packages equivalent in size to baseballs, from a motel room over the course of a week. Trena denied any direct involvement in the sales. Anderson gave substantially the same information to the officers. He admitted, after being *Mirandized*, he had received the methamphetamine from a supplier and traveled to Indiana to sell it with McKibben. He admitted the money from the safe was from the sale of the methamphetamine. He further stated he and McKibben had sold the methamphetamine by the gram to make more money but they had fallen short and would be unable to repay the supplier.

The State charged Anderson with conspiracy to deliver a controlled substance as a B felony, in violation of Iowa Code section 124.401(1)(b)(7); possession of a controlled substance, in violation of section 124.401(5); and three counts of child endangerment, in violation of sections 726.6(1)(a) and 726.6(7). The trial information and minutes of testimony list Arends as a witness but do not list Trena as a witness. Anderson filed a motion to suppress based on four claims: (1) the consent to search was not knowing or voluntary; (2) if the

consent was valid, the search exceeded the scope of the consent; (3) the statements made by Anderson, Trena, and McKibben were not knowing and voluntary; and (4) the statements made by Anderson were fruit of the poisonous tree from the items illegally obtained from the vehicle. Following a hearing, the district court denied the motion on all four grounds.

Just prior to trial, the State and Anderson reached an agreement: the State dismissed all but the conspiracy to deliver controlled substance charge, and reduced it from a B felony to a C felony; Anderson waived jury trial, and the parties submitted the case as a bench trial on the minutes. The parties offered the trial information and the minutes of testimony into evidence by stipulation. Next, the State offered, and the court took judicial notice of, the transcript of the suppression hearing. The court admitted the transcript without objection from the defendant. The court found Anderson guilty based on his confession as corroborated by Trena's statements, the drug dog's alert to the car and money, the money, and how it was folded.

Anderson filed a combined post-trial motion for new trial, in arrest of judgment, and to set aside verdict for jeopardy attachment. In relevant part, Anderson complained the court considered hearsay statements entered into the record through the minutes of testimony in which Arends recounted Trena's admissions about the sale of drugs and the evidence was insufficient to reach a finding of guilt. The district court held a hearing on these motions. Without issuing a written ruling, the court ruled from the bench, stating

> The court did use Mr. Anderson's wife's statements and considered
> them to be evidence. . . . And that was probably in error. So for

purposes of what we're doing here today, I'm not going to consider her statements as a basis for anything that I would use in arriving at a verdict in this matter. However, I agree with the county attorney that even when the court takes Ms. Anderson's statements out of the mix and does not consider them that there is still sufficient corroboration in this matter as to Mr. Anderson's confession.

Later in its oral ruling, the court stated, "I would also find that the conviction of Mr. Anderson in this matter was not contrary to the weight of evidence. I believe there was sufficient evidence without the use of Ms. Anderson's statements[.]"

Anderson appeals from the denial of the motion to suppress, admission of hearsay statements made by Trena, and the denial of the motion for new trial based on sufficiency of the evidence.

## II.     ANALYSIS.

### A.     Motion to Suppress.

The standard of review on a motion to suppress based on federal and state constitutional grounds is de novo. *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). Evidence obtained in violation of the Fourth Amendment guarantee against unreasonable search and seizure should be excluded. *Terry v. Ohio*, 392 U.S. 1, 12 (1968).

#### 1. Unreasonable Expansion of Purpose for Stop.

"[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Id.* at 17. "The scope of the search must be strictly tied to and justified by the circumstances which rendered its initiation permissible." *Id.* (internal quotations omitted). Anderson argues Arends unreasonably expanded his search beyond the purpose of the traffic stop. The State responds Anderson failed to preserve this argument

for appeal. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senacaut*, 641 N.W.2d 532, 537 (Iowa 2002).

In his motion to suppress, Anderson argued "1) The consent to search was not knowing or voluntary. 2) If the consent was knowing and voluntary, the search exceeded the scope of the consent." Anderson now complains the search was unreasonably expanded beyond the purpose of the stop. This is a different claim, and one not raised before the district court. Therefore, it was not preserved for appeal, and we will not consider the issue.

### 2. Voluntariness of Consent.

Anderson next contends the consent Trena gave to search the vehicle was not voluntary due to the coercive circumstances surrounding the stop. Generally, "[a] warrantless search conducted by free and voluntary consent does not violate the Fourth Amendment." *State v. Lowe*, 812 N.W.2d 554, 572 (Iowa 2012). Consent is voluntary when given "without duress or coercion, either express or implied." *Id.* The State has the burden to prove consent was voluntary by a preponderance of the evidence. *Id.* Voluntariness must be determined from the totality of the circumstances. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). Courts consider several relevant factors, including

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [her] Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or

punishment to extract consent; (3) whether police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether consent was given in a public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

*United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010) (internal citation omitted).

Anderson asserts the circumstances leading to Trena giving consent to search were coercive: Trena was concerned for the safety of her children, given their medical issues; she was upset by the stop and questioning, appearing stressed and crying; the stop occurred late at night, around 3:15 a.m.; she was required to stand in a "dark, vacant" parking lot with her three children, one or more of whom required prescription medication; the police dog was present.

At the time she gave her consent, Trena was sitting in the passenger seat of the patrol vehicle. Arends did not use any threats, physical intimidation, or punishment to extract the consent. He made no promises or misrepresentations related to the consent. Trena was not under arrest. Arends advised her of her right to refuse consent. The stop did occur late at night; however, the cars were located in a reasonably well-lit gas station parking lot. At the time Trena gave the consent, the children were still in the car, not required to stand outside it. Trena appeared nervous or stressed to Arends, however, she expressed no specific cause for the distress. The canine officer was secured in his kennel in the back of the patrol vehicle. At no point prior to giving consent to search did Trena express any concern about the presence of the dog. She expressed no concern of immediate medical risk to the children; when she asked if she could retrieve

some of the children's medications from the trunk of the vehicle, the officers allowed her to do so. We find little to support Anderson's argument that the conditions prior to consent were coercive. Based on the totality of the circumstances, we find the consent was voluntary.[2]

  **b.  Hearsay Statements.**

  Challenges to rulings on hearsay objections are reviewed for correction of errors at law. *State v. Ross*, 573 N.W.2d 906, 910 (Iowa 1998). Hearsay is a statement, other than one made by a declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Iowa R. Evid. 5.801(c). Anderson contends he waived jury trial and agreed to a bench trial on the minutes of testimony. Trena was not listed as a witness in the minutes of testimony. Therefore, he argues, the court's reliance on Arends' statements in the minutes of testimony that recounted statements made by Trena are inadmissible hearsay.

  The State replies both parties offered the minutes of testimony into the record by stipulation. The State asked the court to take judicial notice of the suppression hearing transcript, which also contained substantially the same hearsay statements by Trena, and Anderson did not object. Therefore, it argues, both sources of evidence were admitted and the court could consider their contents, including hearsay statements.

---

[2] The State offers the alternative argument that the money would have been found through inevitable discovery once Arends ordered the car impounded, as he intended to do. Because we find the circumstances were not coercive and the consent was voluntary, we need not address this argument.

Where a party states no affirmative objection to evidence offered by stipulation, the party waives error on its admission. *See State v. Brown*, 656 N.W.2d 355, 360-61 (Iowa 2003); *State v. Terry*, 569 N.W.2d 364, 369 (Iowa 1997); *State v. Schmidt*, 312 N.W.2d 517, 517-18 (Iowa 1981). At a pre-trial conference, Anderson waived jury trial, and the court accepted the parties' agreement to proceed with a bench trial on the minutes. The State requested the court admit the minutes of testimony into evidence and take judicial notice of the transcript of the suppression hearing. The court then asked Anderson's counsel the following:

> THE COURT: Any objection on behalf of the defendant to the introduction of the Minutes of Testimony as a part of the evidence in this matter, as well as the Court taking judicial notice of the transcript of the suppression hearing, the original of which is in the file, and also the Court, I guess, taking judicial notice of the fact that the defendant's wife, as well as one Michael Patrick McKibben, would be available as witnesses at trial? And I think some of their statements are in the Minutes for that matter. Any objection?
>
> DEFENSE COUNSEL: Your Honor, as to the overall minutes of testimony and the original witness list, there would be no objection to the list of original witnesses and the testimony that they would give as enunciated in the minutes of testimony.
>
> . . . .
>
> THE COURT: . . . [I]n the reading of the minutes of testimony and in the reading of the transcript of the suppression hearing, one or more of the officers have referred to a number of statements made by Mr. Anderson's wife, as well as Michael Patrick McKibben.
>
> And the court understands that those statements, as part of the minutes of testimony and a part of the transcript of the suppression hearing, are not being objected to by the defendant. In other words, they're in there. The court can consider them. There is no objection made to them by the defendant; is that correct?
>
> DEFENSE COUNSEL: No, the court can consider them and provide and consider the appropriate evidentiary standard and weights to those statements.

Anderson now claims he believed the judge would choose to exclude Trena's statements as inadmissible hearsay, the "appropriate evidentiary standard." Anderson stipulated to entry of the trial information and affirmed on the record he had no objection to the court considering Trena's statements, even if they were hearsay. Counsel's statement that the court could consider Trena's statements with "the appropriate evidentiary standard and weights" is not a legally cognizable evidentiary objection to those statements.[3] Therefore, under our long-standing case law, Anderson waived any hearsay objection, and the court was entitled to consider all the minutes of testimony and the suppression hearing transcript as evidence.[4] *See, e.g.*, *Brown*, 656 N.W.2d at 360-61; *Terry*, 569 N.W.2d at 369; *Schmidt*, 312 N.W.2d at 517-18.

    **c.    Sufficiency of the Evidence.**

Anderson contends the court's finding of guilt is contrary to the weight of the evidence and submits there is a difference between the weight of evidence and sufficiency of evidence but does not explain how this applies to his challenge. *See State v. Ellis*, 578 N.W.2d 655, 657-58 (Iowa 1998). He uses weight and sufficiency interchangeably in his brief and cites cases that apply a sufficiency-of-the-evidence standard. *See State v. Randle*, 555 N.W.2d 666, 671-72 (Iowa 1996); *State v. Robinson*, 288 N.W.2d 337, 340-41 (Iowa 1980). Thus, our review is of the sufficiency of the evidence. We review sufficiency of

---

[3] Read in the context of the defense theory as articulated in counsel's closing argument, his statement "the court can consider them and provide and consider the appropriate evidentiary standard and weights to those statements" was consistent. His challenge in the trial of this case was not to the evidence that was presented, but that the evidence of corroboration of a methamphetamine conspiracy was insufficient.

[4] Anderson does not claim trial counsel was ineffective in failing to object to hearsay.

the evidence issues for correction of errors at law.  *Randle*, 555 N.W.2d at 671. We uphold a finding of guilt if the verdict is supported by substantial evidence. *State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005).  Evidence is substantial if a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*  We consider all evidence in the case, including that which detracts from the verdict.  *Id.*  We view the evidence in the light most favorable to the State.  *Id.*

The theory of Anderson's case, as argued to the district court and repeated here, is his confession that he had worked with McKibben to transport and sell the methamphetamine was not adequately corroborated with additional evidence.  Under Iowa Rule of Criminal Procedure 2.21(3), "A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense[.]"  Further, "The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the defendant committed the offense."  Iowa R. Crim. P. 2.21(4).  It is the court's duty to determine the existence of corroborative evidence.  *State v. Polly*, 657 N.W.2d 462, 467 (Iowa 2003).  Corroborative evidence need not address every element of the crime charged.  *Id.* Corroboration need not be strong, so long as it confirms some material fact connecting the defendant with the crime.  *Id.*  "Other proof" does not have to prove the offense beyond a reasonable doubt or even by a preponderance of the evidence.  *Id.*

Anderson was convicted of conspiracy to deliver a controlled substance, in violation of Iowa Code sections 124.401(1)(c)(6) and 706.1. Iowa Code section 124.401(1)(c)(6) provides:

> [It is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance, a counterfeit substance, or a simulated controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, delivery, or possess with the intent to manufacture or deliver a controlled substance, a counterfeit substance, or a simulated controlled substance.

Iowa Code section 706.1 provides:

> A person commits a conspiracy with another if, with the intent to promote or facilitate the commission of a crime which is an aggravated misdemeanor or felony, the person does either of the following:
>   a. Agrees with another that they or one or more of them will engage in conduct constituting the crime or an attempt or solicitation to commit the crime.
>   b. Agrees to aid another in the planning or commission of the crime or of an attempt or solicitation to commit the crime.

Anderson argues the only evidence corroborating his confession to planning with McKibben to sell the methamphetamine was Trena's statements, the rolled-up cash, and the drug dog's behavior alerting on the cash. The officers found no physical evidence of methamphetamine. Anderson argues because there was no corroborative evidence of the methamphetamine, other than Trena's statements, the evidence was insufficient to convict.

We have already determined the court was able to consider Trena's statements. They corroborate Anderson's statements as to the source of the methamphetamine and the plan and purpose Anderson and McKibben had in traveling to Indiana. The officer testified the cash was divided and folded

consistent with a drug transaction. Further, our case law is clear that the corroborative evidence need only confirm some material fact connecting the defendant with the crime; it need not establish the crime independently beyond a reasonable doubt. *See Polly*, 657 N.W.2d at 467. We conclude the "other proof" is sufficient to corroborate Anderson's own confession in this case. The evidence is sufficient to support a verdict beyond a reasonable doubt. Accordingly, the district court committed no error in finding Anderson guilty.

## III.    CONCLUSION.

On our review, we find the district court correctly denied the motion to suppress. We further find Anderson waived error on the admission of hearsay statements by stipulating or failing to object to entry of the minutes of testimony and the suppression hearing transcript. Finally, we find there was sufficient "other proof" to corroborate Anderson's confession to the offense. Thus, the evidence was sufficient to support the guilty verdict beyond a reasonable doubt. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**